LOUISE ELLIS, Respondent, *v.* ANNA M. KELSEY et al., Appellants.

**Executors and trustees — decedent's estate — action to establish legitimacy of alleged heir — judgment directing payment by executor and trustee to plaintiff of income previously paid to others — in absence of finding of bad faith allowance of interest only at rate paid by banks acting as depositories proper — executor and trustee entitled to commissions where they acted in good faith — entitled to allowance for counsel fees in defending action where plaintiff charged bad faith and sought to penalize them and deprive them of commissions — payment of principal of mortgages out of income — judgment should direct equitable adjustment where plaintiff likely to receive remainder — enforcement of participation by way of subrogation.**

1. Where, by the terms of an interlocutory judgment, entered upon a finding sustained by sufficient evidence that plaintiff is the daughter and sole heir of a decedent, it is adjudicated that the defendants, executor and trustee, account to the plaintiff for moneys which, by the terms of the will from which they derived their authority, were payable to the heirs of said decedent and which they had been paying to others under the mistaken supposition that they were such heirs and pursuant to decrees on two accountings to which plaintiff

had not been cited, where there is no finding of bad faith on the part of such executor and trustee and from the circumstance that both before and after the dates of the accountings plaintiff made no claim as heir and in view of other acts and proceedings there is no basis for a finding of bad faith on their part, it is proper to treat the executor and trustee as if they were holders of such funds awaiting the final decision of the courts as to the person ultimately entitled to them and charge them only the current rate of interest allowed by banks acting as depositories.

2. It being determined that the executor and trustee acted in good faith in paying money to the wrong parties which they must now pay to the plaintiff and there being no question as to the amount received and paid out, they are entitled to their commissions thereon.

3. A contention that the executor and trustee were not justified in employing counsel, to litigate in this proceeding the question of plaintiff's legitimacy, cannot be sustained where plaintiff insisted that their actions were taken in bad faith and she sought to charge them with interest as a penalty and deprive them of their fees and commissions because of such. bad faith. Under such charges the executor and trustee were justified in employing counsel to protect their interests and a reasonable allowance to them for counsel fees was proper.

4. It appearing that the executor had paid out of income a certain sum to reduce the principal of certain mortgages on property belonging to the trust estate and that, in all likelihood, plaintiff will receive the remainder after the life estate falls in, the final judgment should provide that upon payment by the executor to plaintiff of such sum with interest at three per cent he be adjudged to have a lien upon any interest in the principal coming to plaintiff in remainder and if she has in any way disposed of her remainder interest or incumbered the same that she be not entitled to payment of such sums.

5. Any rights the executor may have to enforce participation by way of subrogation in the mortgages shall not be prejudiced by such payment to plaintiff.

*Ellis* v. *Kelsey*, 214 App. Div. 784, modified.

(Argued December 2, 1925; decided December 15, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 8, 1925, affirming a final judgment in favor of plaintiff entered after affirmance by the Appellate Division of an interlocutory judgment of Special Term

adjudicating that plaintiff was the legitimate daughter and sole heir of George M. Chapman, deceased, and directing the trustee under the will of Louisa W. Chapman, deceased, and her executor to account for certain income directed by the said will to be paid to those persons who would be the heirs of said George M. Chapman at the date of the death of the said testatrix.

*Henry L. Sherman, Harold Swain, Lionel S. Popkin* and *Robert W. Cromley* for Title Guarantee and Trust Company et al., appellants. The judgment below is wholly unsupported by such evidence as is required by law, and judgment should have been entered in defendants' favor. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Matter of Van Slooten* v. *Wheeler*, 140 N. Y. 624; *Holt* v. *Twite*, 188 N. Y. 17; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Walbaum* v. *Heaney*, 104 App. Div. 412.) The judgment depriving the trustee of all commissions is wrong and should not be allowed to stand. (*Matter of Edelmeyer*, 157 App. Div. 773; *Matter of Baker*, 72 App. Div. 211; 172 N. Y. 612; *Matter of Brintnall*, 40 Misc. Rep. 67.) The referee's conclusion that the equitable rate of interest at three per cent to be charged upon payments by the trustee to the supposed beneficiaries pursuant to the surrogate's decree of April 25, 1913, should be upheld. It is unjust to surcharge the trustee with interest at six per cent. (*Herzog* v. *Title Guarantee & Trust Co.*, 148 App. Div. 234; 210 N. Y. 531; *Matter of Peoples Trust Co.*, 169 App. Div. 699; *Woerz* v. *Schumacher*, 161 N. Y. 530; *Matter of Barnes*, 140 N. Y. 468; *Price* v. *Holman*, 135 N. Y. 124; *Matter of Nesmith*, 140 N. Y. 609.) Plaintiff's objection to the credit shown in the trustee's account for legal services and disbursements should not have been sustained; the referee's finding should have been upheld. (Perry on Trusts, § 328; *King* v. *Talbott*, 50 Barb. 453; 40 N. Y. 86; *Roosevelt* v. *Roosevelt*, 6 Abb. [N. C.] 447; *Smith* v. *Johnson*, 200 App. Div. 811.)

*Frank C. Laughlin, Stewart W. Bowers* and *Louis A. Rosen* for Samuel Keeler, as executor of Louisa W. Chapman, deceased, et al., appellants. The executor's commissions should have been allowed. (*Averill* v. *Taylor,* 8 N. Y. 44; *Matter of Ehrsam,* 37 App. Div. 272; *Desbard* v. *Churchill,* 53 N. Y. 192; *Buck* v. *Cleveland,* 143 App. Div. 874; *Roland* v. *Morgan,* 3 Dem. 289; *Matter of Schaefer,* 34 Misc. Rep. 34; *Matter of Ingersoll,* 95 App. Div. 111; *Matter of Rutledge,* 162 N. Y. 31; *Matter of Edelmeyer,* 157 App. Div. 773; *Matter of Baker,* 72 App. Div. 211; 172 N. Y. 612.) The executor should not have been surcharged with the sum of $3,840, representing the amounts paid by him for principal and interest on the mortgages on the real property upon which testatrix held an undivided one-half interest for the life of her son, because said payments were made pursuant to the agreement of March 16, 1898, between Louisa W. Chapman and Cora Chapman and the Title Guarantee and Trust Company, which said agreement did not terminate by its terms without the consent of Cora Chapman, which concededly has never been given. It is to be remembered that the plaintiff's only claim with respect to this money is under the will of this appellant's testatrix, Louisa W. Chapman. (*Kernochan* v. *Murray,* 111 N. Y. 306; *Terwilliger* v. *Ontario C. & S. R. R. Co.,* 149 N. Y. 86; *Assets Realization Co.* v. *Roth,* 226 N. Y. 370.)

*Patrick E. Callahan* for Hawley Chapman, appellant.

*Eugene A. Sherpick, Harold R. Medina, Leander I. Shelley, William Bittle Symmes* and *Harold A. Herrick* for respondent. The trustee's first point, that the judgment below is wholly unsupported by such evidence as is required by law, is untenable. The arguments therein contained are predicated upon a rule of law applicable only to contract actions. Furthermore, those arguments are an attempt to engage this court in a controversy

as to the weight of evidence. (*Hynes* v. *McDermott*, 91 N. Y. 451; *Hawkins* v. *Mapes-Reeve Const. Co.*, 178 N. Y. 236; *Ostrom* v. *Greene*, 161 N. Y. 353; *Costello* v. *Costello*, 209 N. Y. 252; *Villard* v. *Villard*, 219 N. Y. 482; *Race* v. *Krum*, 222 N. Y. 410.) Under all the facts in this case and under the interlocutory judgment the plaintiff is entitled to six per cent interest upon all the moneys due her. (*Lawrence* v. *Grout*, 121 App. Div. 701.) The trust estate was not attacked in this proceeding; it is a controversy solely· between respective claimants. The disbursements for counsel fees were made by the trustee on behalf of one set of claimants. They cannot be charged against the plaintiff. To do so would be to make her pay her adversaries' expenses. The award of costs against the defendants determined that they should not receive counsel fees. (*Matter of Howell*, 215 N. Y. 466; *Matter of Holden*, 126 N. Y. 589; *Savage* v. *Sherman*, 87 N. Y. 279; *Blair* v. *Cargill*, 111 App. Div. 853; *Matter of Welling*, 51 App. Div. 355; 53 App. Div. 639; *Hosack* v. *Rogers*, 9 Paige, 461; *Matter of McEckron*, 55 App. Div. 147; *Matter of McDowell*, 202 App. Div. 568; *Jewett* v. *Schmidt*, 45 Misc. Rep. 471; *Matter of Long Island Loan & Trust Co.*, 157 App. Div. 310.) Payments in reduction of principal should have been charged by the executor and by the trustee against the principal account. To use income in payment of principal indebtedness constitutes an invalid accumulation in violation of the statutes. (*Hascall* v. *King*, 162 N. Y. 134; *Hafner* v. *Hafner*, 34 Misc. Rep. 65; 62 App. Div. 316; 171 N. Y. 633.) The contention of the executor that he should not have been surcharged with the sum of $3,840 representing the sums paid by him out of income in reduction of principal on mortgages, is without merit and inapplicable to the facts in this case. (*Farmers' Loan & Trust Co.* v. *Wilson*, 139 N. Y. 284; *Farmers' Loan & Trust Co.* v. *Winthrop*, 238 N. Y. 477; *Weber* v. *Bridgman*, 113 N. Y. 600.)

CRANE, J. We are of the opinion that there was a question of fact regarding the legitimacy of the plaintiff and that there is sufficient evidence to sustain the finding that the plaintiff is the daughter of George M. Chapman, born to him by his wife, Jane Compton Chapman. The interlocutory judgment brought up for review on appeal from the final judgment is, therefore, affirmed.

By the terms of the interlocutory judgment the executor and the trustee of the will of Louise W. Chapman were required to account to the plaintiff as the heir of George M. Chapman for the moneys which they had received in accordance with the provisions of that will and which were payable to the heirs of George M. Chapman as they existed May 13, 1900, the date of the death of Louise W. Chapman. The executor and the trustee accounted and the matter was referred to John B. Doyle, as referee, to take and state the account.

The executor and trustee on their previous accountings of 1910 and 1912 before the surrogate of Kings county had omitted to cite the plaintiff and in accordance with the decrees therein entered had paid over the balance in their hands to the individual defendants representing the heir of George M. Chapman. The interlocutory judgment in this case determines that they were in error; that the plaintiff was the heir of George M. Chapman, not Julia, the sister of George, and that the money paid out must be returned.

The referee to take the account reported that the executor and the trustee in omitting to cite the plaintiff in the Surrogate's Court and in paying over the money to the defendants had acted in good faith, and should not be charged on the various amounts directed to be paid back, six per cent interest as in the nature of a penalty but should only be charged three per cent, the current rate of interest allowed by banks acting as depositories. In other words, he treated the executor and the trustee as the holders of these funds awaiting the final decision

[241 N. Y. 374]     Opinion, per CRANE, J.     [Dec.,

of the courts as to the person ultimately entitled to them. In this we think he was correct. There is no finding by the trial court that the executor and the trustee acted in bad faith. There are findings to the effect that the Title Guarantee and Trust Company, the trustee, knew that the plaintiff was the daughter of George M. Chapman, and that Keeler, the executor, knew that she claimed to be legitimate. If these findings stood by themselves, it would be difficult to understand why the plaintiff was not cited upon their accountings in the Surrogate's Court. The plaintiff's actions, however, together with those of her mother, Jane Chapman, have been quite strange to say the least. I do not intend to review and could not within proper limits all the facts; it will suffice to say that the plaintiff had been in the Supreme Court in 1907 and 1908 regarding her claims to funds coming through George M. Chapman and while testifying to her relationship made no claim as an heir. The money she sought in these actions could have been obtained by her under claim of heirship in proper proceedings therefor. She alleged the heirship of others. In 1914 in proceedings before the surrogate of Kings county in which the accountings of this executor and trustee were referred to, she again sought to enforce a deed or agreement regarding the moneys here in question, and here again she did not insist upon her heirship. Resort to this proceeding before the surrogate would have been unnecessary if she had then known or thought that she had inherited any property as an heir of George M. Chapman. If both before and after 1910 and 1912, the dates of the accountings, she did not claim as heir, it is not likely she would have made such a claim if she had been cited upon the accountings; in fact it is conceded that she did not know of her rights as an heir until 1916. The trial court found as follows: " That until 1916 the plaintiff believed that her rights as heir of George M. Chapman were included in the two releases given by her mother in 1872 and 1893

and running from her, her heirs and assigns to George M. Chapman and his executors respectively, and she did not learn the true facts until Mr. Bacon told her just before this action was commenced in 1916."

It is fortunate for her that her rights were not adjudicated in the accountings and before she and her lawyers knew what they were.

Under these circumstances and in view of the other acts and proceedings which we do not stay to mention we do not think that the executor and trustee acted in bad faith. This being so the final judgment which set aside the report of the referee in this particular must be modified and the charge of six per cent on all the funds directed to be paid back must be reduced to three per cent in accordance with the referee's report.

We agree with the referee that the decision requiring the executor and trustee to pay to the plaintiff the amount due under the terms of the will of Louise W. Chapman " with interest thereon " did not compel him to allow six per cent interest.

Another conclusion follows this finding of good faith upon the part of the executor and the trustee. They received and paid out the money. Acting in good faith they paid it to the wrong party under the decree of the court. They must now pay it to the plaintiff. There is no question as to the amount received and paid out. This passes through the hands of the executor and the trustee. The referee reported that they were entitled to their commissions. The final judgment disallowed the report of the referee in this particular and refused fees and commissions on account of their bad faith. Having determined that the executor and trustee acted in good faith the final judgment must be modified in this particular and the report of the referee confirmed.

In this litigation the executor and the trustee employed lawyers to defend them. Attorney's fees were also incurred by Clarence H. Kelsey and the other individual

defendants to protect their individual rights. The plaintiff has insisted that the executor and the trustee should have stepped aside and permitted her to litigate the question of her legitimacy with the defendants and that the executor and trustee were not justified in employing counsel. This cannot be when she is insisting that their actions were taken in bad faith and has sought to charge them, and thus far has succeeded in charging them with six per cent interest as a penalty and has deprived them of their fees and commissions because of that bad faith. Under such charges the executor and trustee were justified in employing counsel to protect their interests, especially when the plaintiff by her previous proceedings and the actions and conduct of herself and mother had caused many of the complications. I do not speak of these complications in the spirit of criticism; I merely refer to them as conceded facts explained away by the plaintiff as stated in the above quoted finding. The referee accordingly allowed certain items of compensation to the executor and the trustee for lawyers' fees. We think these were reasonable and that the final judgment should not have interfered with his report in this particular. The final judgment is, therefore, modified to allow these items.

We now come to the item of $3,840 paid out by the executor Keeler on underlying mortgages held by the New York Life Insurance Company to reduce the principal. Louise W. Chapman and her daughter-in-law, Cora Chapman, had made an agreement whereby the Title Guarantee and Trust Company was to act as agent in collecting the income and applying it, or a portion of it, to interest, taxes, etc., and in reduction of the principal of the mortgages if required. After the death of Louise W. Chapman this agency ended and the referee was right in so finding. The executor Keeler, however, in order to preserve the life estate from being wiped out under threatened foreclosure paid out at various times from the

income of the life estate this sum of $3,840 in the reduction of the principal of the mortgages. The referee found that the executor Keeler should be surcharged with this amount and directed that it be paid to the plaintiff plus interest, but recognized the inequity of his finding and tried to remedy it by suggesting that the executor procure certificates of participation in the mortgages from the New York Life Insurance Company. We agree that a situation has arisen which calls for equitable relief if it can be granted. The situation is peculiar to this case and equity procedure exists for the very purpose of making these adjustments. In all likelihood the plaintiff, as heir of George M. Chapman, will receive the remainder after the life estate falls in. It is said to be of great value. The will of George M. Chapman gave a life estate to his son Hawley, and his wife Cora, and the remainder to their children if they have any. They never have had any children and are not likely to, for reasons that need not be stated. The remainder on the failure of children was undisposed of. It will, therefore, pass to George M. Chapman's heir who is the plaintiff according to the decision of this case. While she is over eighty years of age yet her vested interest may pass so far as we can judge by assignment or devise. It would not be right for her to receive this remainder enhanced in value by $3,840 due to the reduction of the mortgage principal out of Keeler's money. If he paid out money to reduce the mortgages and the plaintiff is to benefit by it, he should be protected if it is possible. We, therefore, direct that the final judgment be amended by providing that upon his payment to the plaintiff of the $3,840 with interest at three per cent that he be adjudged to have a lien upon any interest in George M. Chapman's property coming to her in remainder which lien shall bind her, her heirs and assigns. If the plaintiff has in any way disposed of her remainder interest or incumbered the same, then we adjudge that she has had the benefit

thereof and shall not receive this item of $3,840 and interest from Keeler, the executor. The judgment is further modified by providing that the payment to the plaintiff of this amount shall not prejudice whatever rights Keeler may have to enforce participation by way of subrogation in the mortgages held by the New York Life Insurance Company should he prefer this remedy. Whether these mortgages still exist and are now a lien upon this property we do not know. The mortgagee is not before us.

As to the present contention of the committee of Hawley Chapman, the courts below have construed the will of Louise W. Chapman as giving to the heir of George M. Chapman, living May 13, 1900, the balance of the income from the life estate over and above that necessary for the ample support and maintenance of Hawley Chapman. We adopt this construction.

Our conclusion, therefore, is that the final judgment should be modified by approving the report of the referee in all the particulars herein mentioned with the exception of this item of $3,840, which is disposed of as already stated and, as thus modified, the final judgment should be affirmed, with a separate bill of costs to each party appearing by counsel payable out of the estate.

POUND, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; HISCOCK, Ch. J., absent; CARDOZO, J., not voting.

Judgment modified, etc.