In the Matter of the Estate of Sol Ducker, Deceased.

Surrogate's Court, New York County, March 11, 1933.

*Zalkin & Cohen*, for the administrators and executors.

*Spiro & Felstiner*, for Ansel Ducker and others.

*Cardozo & Nathan*, for Dorothy Geiger.

*Isaac Cohen,* special guardian.

*Harold E. Lippincott,* for the National Surety Company.

*Thomas E. White,* for the Fidelity and Deposit Company of Maryland.

DELEHANTY, S. The report of the referee herein was heretofore duly confirmed by Mr. Surrogate O'BRIEN. In so far as the papers now presented constitute a motion for reargument, such motion is denied.

The referee has reported that the acts of the accounting parties in their respective characters of temporary administrators and executors were so interwoven as to be incapable of segregation. This finding has already been confirmed. The decree, therefore, will apportion the burden of the surcharge equally.

On the hearings before the referee serious charges of maladministration were made against the accounting parties and vigorously prosecuted by the objectants. Lengthy hearings were had and on all questions of good faith of the accountants the referee decided in their favor. The objecting parties are a brother and three sisters of one of the accounting parties, a son of the deceased, who had a thirty per cent interest in a hat business in which the father owned the remaining seventy per cent. It is shown by the record that the business of the copartnership was conducted for a time by the executors under the former partnership name and that about a year after the death of the deceased a corporation was formed by which the business was thereafter carried on and that such business was wound up in an insolvent condition in 1929, some seven years after the death of the deceased.

Basically the position of the objectants in respect of the burden of the costs and allowances herein is predicated upon the assertion that this continuance of the business was improper and that the organization of the corporation and the subsequent carrying on of business by it constituted a diversion of funds of the estate and an unlawful commingling of the property of the estate with that of the son in violation of subdivision 7 of section 104 of the Surrogate's Court Act.

In view of this position of the objectants it is necessary to consider the rights of a surviving partner in partnership assets. Since *Williams* v. *Whedon* (109 N. Y. 333) it has been familiar law that partnership assets as such are not owned by the estate of the deceased partner and that the legal title thereto is completely vested in the surviving partner. The estate had the right only to receive, after liquidation of the firm business, the net value of the share of the deceased partner. (*Costello* v. *Costello,* 209 N. Y. 252.) In the

last cited case the court (p. 259) makes clear that the survivor is entitled to the possession and control of the assets and has the right " within the limits of good faith " to dispose of the assets and close the partnership affairs. The referee has held unqualifiedly that the accountants have throughout acted in good faith. It is apparent from the record that the accounting son of the deceased with his co-executor, a personal friend of the deceased, unwisely determined to carry on the business of the former copartnership so as to provide a livelihood for the family of the deceased, four of whom are now attacking that determination. (Referee's opinion, pp. 9, 10.) That this decision so to carry on the business exposed the accounting parties to a surcharge has been found by the referee and confirmed by Mr. Surrogate O'BRIEN. It is plain upon the record and has been specifically held by the referee that during this period of unwarranted withholding from the estate of the net worth of the partnership interest, there was paid to or on account of the family group a total in excess of $84,000 (Referee's finding 49). Eliminating from this sum the one-fifth which was presumably the share of the accounting son, there is shown to have been enjoyed by the objecting parties something over $65,000 in this period of alleged maladministration. On the basis of a valuation of the partnership interest at $41,000, as found by the referee, and deducting therefrom the one-fifth due to the accounting son, there is reached a fund of about $33,000 which in a proper administration should have been invested for the objectants in legal securities from a date fixed by allowing a reasonable period for liquidation of the partnership business. Assuming this period of investment to be eight years as asserted on the argument, and assuming further a net annual return of five per cent, there would have been earned by the fund for the objecting parties a total of approximately $13,000 in income. They have received over these years the benefit of five times that sum and, by reason of the decree about to be entered, will have reconstituted in the trust the entire principal of the estate undiminished by the universal shrinkage of security values which has adversely affected trust estates no matter how carefully managed. (Referee's opinion, p. 26.) No doubt it was a recognition of this situation which led the referee to inquire (apparently on his own initiative) whether the proceeding by these sisters and brother against the accounting son-executor was a collusive attempt to charge the sureties (Referee's opinion, p. 10). The record shows that the son during this period of administration of the business drew for himself only seventy-five dollars a week (Referee's opinion, p. 15) and in the windup lost wholly the thirty per cent interest in the business which was his at his father's death.

The referee has found that there is no collusion in fact and that the brother and sisters of this accounting son (at least two of whom received this excess return of income for some years after attaining majority) are in truth invoking the utmost rigor of the law against their brother. The record discloses that they sought in this proceeding to surcharge him and their father's friend, the coexecutor, not only with the amount actually found by the referee to be due but with a sum in excess of $120,000 (Briefs of objectants).

There is thus presented the problem whether the burden of the accounting proceeding shall be placed upon the accounting parties as a further surcharge or whether it shall be borne by the gross estate. In this connection the matter of commissions is likewise involved. While the objectants have received the benefit of upwards of $65,000 currently paid, they deny that the accounting parties are entitled to any commissions despite the finding of their good· faith. There is authority for the grant to the accounting executors of commissions in circumstances such as here disclosed. (*Ellis* v. *Kelsey,* 241 N. Y. 374, 381.) The proceedings before the referee preclude such grant, however. (Referee's finding 66; Conclusion of law X.) On the authority cited, the employment of counsel and the resistance of the attempted surcharge of $120,000 was justified and the reasonable cost of attorneys' fees for this purpose may be allowed to the executors. Under the unusual circumstances shown in the record of this proceeding, the fact that the accounting executors are found to have acted in entire good faith, the fact that no personal profit accrued to either of them, the fact that the criticised and irregular conduct was for the sole benefit of the objecting parties, the fact that the objecting parties enjoyed large personal benefits from the irregular conduct of the estate and the fact, finally, that the decree will reconstitute the principal of the estate at its original capital sum undiminished by shrinkage in security values, it seems appropriate to exercise the undoubted discretion vested in the court to allocate to the estate the burden of the costs and allowances. That course will be followed.

The referee's fees have been fixed and the costs and allowances taxed. The compensation of the certified public accountants, the real estate expert and the stenographers should be stipulated and the amounts inserted in the decree. The decree will provide for the deduction from the gross estate of the costs, allowances and expenses. It will further provide that to the extent of one-fifth of the balance, the obligation to make payment will be satisfied by the filing of a receipt and release by Ralph Ducker covering his interests in the estate; that another one-fifth portion of the balance shall be reduced by the sum of $1,000 (Referee's conclusion of law,

V) and the remainder paid over to the trustees for the benefit of Sylvia F. Ducker and that one each of the remaining three-fifths of the balance will be paid over to the trustees for the benefit respectively of Rosella Ducker, Ansel Ducker and Dorothy Ducker Geiger.

Even if the matter of the removal of the testamentary trustees were properly before the court, no basis is shown for their summary removal. If they do not desire to act as such, they may present their resignations before the signing of the decree and in such case a successor trustee will be appointed.

Submit decree on notice in conformity with the foregoing.