In the Matter of the Estate of GEORGE W. KOTLIK, Deceased.*

Surrogate's Court, Kings County, September 21, 1934.

* See, also, 153 Misc. 355.

*Joseph A. Kennedy,* referee.

*George G. Lake,* for the petitioner.

*Sielberman & Davis,* for the administratrix.

*Edward Baruch,* special guardian for Benjamin Kotlik.

*Frances M. Verelli,* special guardian for Sophie, Michael and Louis Kotlik.

WINGATE, S. The facts in the present application for revocation of letters of administration are uncontroverted. At some time prior to 1920 the decedent intermarried with a woman by the name of Hedwig. Three children resulted from this union. The husband and wife separated in that year, and from that date to the present no one has been produced who claims to have seen or heard from her.

In an affidavit made by the maternal grandmother of the infants, who has secured for herself the award of letters of administration on the decedent's estate, verified September 2, 1933, she stated her belief, as the result of alleged " diligent efforts to communicate with her daughter " which had proved unsuccessful, that she believed the latter to be dead. This affidavit was made in connection with an application for letters of guardianship of the children who were at that time respectively seventeen, fifteen and fourteen years of age, and further set forth that the infants were sent from Philadelphia " by their mother " in 1925. This portion thereof is, however, obviously hearsay and inadmissible for the purpose of establishing the fact either of such sending or that Hedwig was alive in 1925. It is, in fact, directly contradicted by the petition of the three children, verified August 30, 1933, which recites that " Hedwig Kotlik, petitioners' mother, is missing and has been missing for the past ten years, and a proceeding will be started to have her declared legally dead."

Neither the grandmother nor the children were produced as witnesses on the hearing in the present proceeding, with the result that there is no proof before the court to the effect that Hedwig was known to be alive subsequent to 1920, when it appears to be conceded that she abandoned her husband, the present decedent.

In or about the year 1923 the decedent began living with the present petitioner, Katherine, and continued to do so without

interruption until the date of his death in the summer of 1933. Five witnesses were produced, whose testimony is unequivocal and convincing, respecting their intimate acquaintance with the decedent and petitioner, and the fact that they continuously represented themselves to be husband and wife and were so considered in the community in which they lived. This was supplemented by considerable documentary evidence amply demonstrating the same condition. One child, Benjamin, was born of this union, who bore the acknowledged relation of child to these parents, and is now living and a party to these proceedings. The uncontradicted showing of the record clearly demonstrates the consummation of a common-law marriage provided there was no impediment to the attainment of this state by way of an existing prior marriage. (*Caujolle* v. *Ferrie*, 23 N. Y. 90, 102, 106; *Gall* v. *Gall*, 114 id. 109, 118; *Tracy* v. *Frey*, 95 App. Div. 579, 583; *Matter of Smith*, 136 Misc. 863, 867.)

The learned referee has recommended a denial of the petition because he has found " that from the date of the marriage of George W. Kotlik, to the date of death of George W. Kotlik there existed an impediment to a valid subsequent marriage between said George W. Kotlik and any other person."

Whereas the referee designates this a finding of fact, it is obviously at best an inference which he deduces from other facts conceded on the record, and with it the court is unable to agree. Nor can the court agree, for the reasons heretofore noted, with the additional finding of fact, " that said Hedwig Kotlik is known to have been living in the year 1925."

This is a case similar to *Matter of Callahan* (142 Misc. 28; affd., 236 App. Div. 814; affd., 262 N. Y. 524) in which various demonstrated facts give rise to different and conflicting inferences. On the one hand, the conceded fact that Hedwig was living in 1920 gives rise by the application of the inference that a condition once shown to exist continues (*Matter of Auditore*, 136 Misc. 664, 672; affd., 233 App. Div. 740; *Matter of Katz*, 135 Misc. 861, 867; *Matter of Rooney* v. *Wiener*, 147 id. 48, 49; *Matter of Keeling*, 148 id. 798, 803) to the result that she is presumed to have continued to live during the period intervening between 1920 and the date of death of the decedent in 1933. If this inference is to be given precedence, it would result in the determination reached by the referee that the decedent's relationship with the applicant was meretricious and not matrimonial; that the applicant was not his wife and that the offspring of their union was illegitimate.

Approaching the subject from another angle, however, the inference is encountered that a cohabitation apparently matrimonial in

character is actually so (*Matter of Biersack*, 96 Misc. 161, 178; affd., 179 App. Div. 916; *Tracy* v. *Frey*, 95 id. 579, 596, 597; *Matter of Smith*, 136 Misc. 863, 868), and that the recognized offspring of such a union is legitimate. (*Matter of Findlay*, 253 N. Y. 1, 10; *Caujolle* v. *Ferrie*, 23 N. Y. 90, 95, 107; *Ellis* v. *Kelsey*, 118 Misc. 763, 766; affd., 208 App. Div. 774; 214 id. 784; affd., as to this point, 241 N. Y. 374, 379; *Matter of Matthews*, 153 id. 443, 447; *Barker* v. *Barker*, 172 App. Div. 244, 249; *Matter of Leslie*, 175 id. 108, 111; *Van Aernam* v. *Van Aernam*, 1 Barb. Ch. 375, 377; *Matter of Bennett*, 135 Misc. 486, 497; *Matter of Smith*, 136 id. 863, 869.)

The question, and the only question, in the case at bar is as to which of these conflicting inferences is to be given effect. On the reasoning of this court in the *Callahan* case, which apparently stood the acid test of approval in the appellate courts by its unanimous affirmance both by the Appellate Division and the Court of Appeals, this is not open to question. The inference of continuance of life is a mere deduction of fact based upon customary experience, while those of the validity of cohabitation of an apparently proper matrimonial character and of the legitimacy of recognized offspring, are true presumptions, involving a very real public interest, which " will not fail unless common sense and reason are outraged by a holding that it abides." (*Matter of Findlay*, 253 N. Y. 1, 8.)

It might be urged that the legitimacy of the child of the applicant and decedent is not necessarily in issue in the present aspect of this proceeding. While this may be strictly true at the moment, the issue must inevitably arise when the question of distribution of the estate comes on for hearing, and at such time the facts of the record would compel a holding of legitimacy and a right to share in the distribution. Under such circumstances, even were the presumption of the validity of a marriage resulting from long and well-established cohabitation of apparently matrimonial character, less cogent than the law declares it to be, the court would hesitate to determine that the applicant was not the valid wife of the decedent when faced by the prompt necessity of deciding that their child was the legitimate offspring of their union.

The court, therefore, disapproves the finding of the referee of the existence of a continuous impediment to the marriage of the applicant and the decedent, determines that a valid marriage between them has been established and grants the relief prayed in the petition.

Proceed accordingly.