OPINION OF THE COURT
Richard H. Farley, J.
Petitioners have filed a petition pursuant to section 77.33 of the Mental Hygiene Law to remove the present conservators of Edith Brownell and have filed objections to their account upon the grounds of self-dealing, failure to obtain a greater return of investment upon the assets of the conservatee, and failure to sell a wasting asset and file annual accounts. Respondent Gwendolyn Cole, the present conservator, was paid the sum of $150 per week from September 19, 1978 to April 30, 1979 by retroactive order of this court entered November 6, 1978 for the care of conservatee. Petitioners object to these payments as well as a payment to respondent Raymond Reynolds of the sum of $300 for the care of the conservatee for a two-week period. In addition, petitioners object that respondent Cole *720 should not have paid herself a fee for the care of conservatee’s dog in addition to its reasonable expenses, that conservatee’s assets should not have been invested in simple interest-bearing saving accounts at 51/4% and 53A% when certificates of deposit and repurchase agreements providing a much higher rate of return were available, that fire insurance, taxes and other expenses should not have been paid upon conservatee’s East Branch property but that it should have been sold immediately, and that the respondents have not filed an annual account, listed individual disbursements, or set forth facts required by section 77.29 of the Mental Hygiene Law.
Respondents’ failure to file annual accounts or list individual disbursements and the provisions required by section 77.29 of the Mental Hygiene Law has been cured by the accounts and proofs presented. The respondents further acted properly in paying taxes, fire insurance and other expenses for conservatee’s East Branch property, and in fact, their failure to do so would have been imprudent. (EPTL 11-1.1, subd [b], par [4].) Certainly a fiduciary bears a duty to sell or convert unproductive assets and reinvest the proceeds. (Matter of Hubbell, 302 NY 246.) A fiduciary is entitled to a certain amount of discretion in determining whether a lease or rental would have an adverse impact on salability. (Cooper v Jones, 78 AD2d 423.) Respondent’s failure to obtain a buyer sooner appears to be the result of a poor real estate market and high interest rates rather than any improper acts on the fiduciaries’ part.
The compensation of a conservator shall be fixed by the court at the time of appointment of the conservator. (Mental Hygiene Law, § 77.27.) The $150 per week paid to respondent Gwendolyn Cole for the care of conservatee was made pursuant to the prior order of this court and constitutes a reasonable sum for the care of a woman who had fractured two vertebrae, particularly in light of the high cost of private nursing care. Since the $300 paid to Raymond Reynolds would have been paid to Gwendolyn Cole for two weeks’ care of conservatee, that sum is also reasonable under the circumstances.
The total fee paid by conservator Gwendolyn Cole to herself for dog care exclusive of expenses paid to third *721 parties for food, shots, spaying and other required expenses totals the sum of $779. A fee for dog care was never fixed by the court but set by the respondents themselves. It is well established that a fiduciary should not deal with himself. This prohibition against self-dealing does not depend upon any question of fraud, but is an absolute rule made to avoid the possibility of fraud and self-interest. (Matter of Ryan, 291 NY 376.) The court shall therefore reduce the allowed fee for dog care to $450 and surcharge the respondent Gwendolyn Cole the sum of $329.
A much more difficult question exists with respect to the administration of the bank and savings and loan savings accounts. Even prior to its 1981 amendment, EPTL 11-2.2 has been held to apply to any fidicuary holding funds for trust investment. (Matter of Berg, 64 Misc 2d 197.) The standard of care required of a fiduciary is pronounced in the prudent man rule. The issue is whether under the circumstances the fiduciary acted with such diligence and circumspection as prudent men of discretion and intelligence in such matters generally employ in their own like affairs to seek a reasonable income and preservation of their capital. (King v Talbot, 40 NY 76.)
A fiduciary should not be surcharged for depositing funds in a commercial bank account where the funds are earmarked for certain expenses. (Matter of Heidenreich, 85 Misc 2d 135.) However, this does not appear to be the situation in this case in which a much smaller amount than $23,000 could have been set aside to cover expenses. One authority notes that a “beneficiary is entitled to the active diligence of the [fiduciary] in seeking and making investments which will bear the highest rate of income consistent with safety.” (3A Warren’s Heaton, Surrogate Courts, § 264, par 2.) The fact that the assets show an overall increase in total value during the accounting period does not insulate the fiduciary from responsibility for imprudence with respect to individual investments for which he would otherwise be surcharged. (King v Talbot, 40 NY 76, 90-91, supra; 3 Scott, Trusts [3d ed], § 213.1, pp 1712-1713.)
Where there has been a breach of trust the rate of interest with which a fiduciary will be surcharged will *722 depend upon the facts and circumstances óf the particular case. (Ellis v Kelsey, 241 NY 374.) If the failure of a trustee in his duty was willful or characterized by bad faith, the highest rate of interest should be imposed, but if there was good faith and honest mistake occurred, the rate rests in the court’s discretion which permits substantial justice considering all the circumstances. (Matter of Tannenbaum, 30 Misc 2d 743.) If the breach of trust consists in the failure of the fiduciary to secure as productive an investment as should have been secured, he is chargeable with interest at the current rate of return on trust investments. (Matter of Johnson, 73 NYS2d 621.)
The average rate of return on six-month certificates of deposits during this period according to the Federal Reserve Board Statistical Release G13 was as follows: 1977 — 5.53%; 1978 — 7.58%; 1979 — 10.06%; 1980 — 11.37%; 1981 — 13.96%. Using the above rates and compounding the interest from six months after the appointment of the respondents as conservators, the court could invoke a surcharge upon the sum of $20,000 which should have been invested in certificates of deposit of over $3,000. In addition, the conservators would be entitled to commissions of nearly $1,100 to be divided equally which the court could allow or disallow according to their conduct in office. However, all of the parties to this proceeding are members of the same family and the court feels that in view of the services of the respondents to their mother during difficult times, and the fact that their mistakes were negligent and not malicious, that the interest of justice would best be served by not surcharging the respondents or allowing them commissions. The respondent Gwendolyn Cole shall be liable to repay the sum of $329 as a surcharge against the cost of dog care.
With respect to the appointment and service of conservators, both business and personal factors are relevant. In one case it was held proper to appoint a person with limited business experience but a better relationship with the conservatee than the appellant son. (Matter of Lyon, 41 NY2d 1056.) The conservatee now resides with petitioners. The conservatee has expressed a preference to continue to live with petitioners and to have them appointed conserva *723 tors. No reason exists why conservatee’s wish should not be granted, conditioned upon the approval of a petition filed by petitioners pursuant to section 77.03 of the Mental Hygiene Law.
Attorney’s fees in the sum of $650 are awarded to attorneys for petitioners pursuant to section 77.33 of the Mental Hygiene Law to be paid from the estate. Likewise the present conservators were justified in employing counsel to protect their interests against other clearly excessive objections and claims for surcharge. (Matter of Berg, 91 Misc 2d 939.) Such services thus being beneficial to the estate, the attorneys for respondents are awarded the sum of $850 chargeable against the estate.