In the Matter of the Estate of THOMAS S. VAN VOLKENBURGH, Deceased.

Surrogate's Court, New York County, January 16, 1931.

Cardozo & Nathan [*Michael H. Cardozo, Jr.,* of counsel], for the administratrix.

*Esselstyn & Haughwout,* for Susie Van V. Huntington.

FOLEY, S. Thomas S. Van Volkenburgh, the decedent, was a lawyer of experience, closely connected with the foundation and upbuilding of the Fifth Avenue Bank of New York city, and was for many years its counsel and one of its directors. He died intestate. He was survived by his widow and a daughter by a former marriage, Mrs. Susie Van V. Huntington. He left a fortune of which, under the law, his widow became entitled to $500,000 and his daughter to $1,000,000. In his lifetime he made various gifts of securities to his wife, the administratrix here. In the course of administration there arose a bitter and prolonged controversy between the widow and her stepdaughter — a not uncommon situation where that relationship exists. The daughter of the decedent compelled the filing of an account. The preliminaries finally led to an issue as to whether the securities in the possession of the widow, and claimed by her as gifts from the decedent, were assets of the estate for which she, as administratrix, must account. A surcharge was thus claimed against her. The referee, appointed to determine these issues, found in favor of the widow and sustained, with but few minor exceptions, her claims that the securities of approximately $200,000 in value were not the property of the estate. The testimony before him was clear and convincing, and his report was confirmed by the surrogate. Upon appeal, my decree was affirmed by the Appellate Division and by the Court of Appeals (*Matter of Van Volkenburgh,* 128 Misc. 819; affd., 226 App. Div. 10; affd., 254 N. Y. 139). The Court of Appeals in its opinion summarizes the controversy over the securities in two sentences: "Not a word in the record suggests that respondent could by any possibility have acquired them except by gift. Everything points in the opposite direction."

The widow, as administratrix, now seeks in this proceeding under section 231-a of the Surrogate's Court Act, to compel the

estate to bear the expense of the services of her attorneys in resisting the unsuccessful attempt of the daughter to surcharge her in her representative capacity. The application is opposed by the daughter upon the ground that the services were rendered to the widow individually, as a donee of the gifts and not as a fiduciary. The record of the accounting proceedings in evidence before me controverts the present contention of the daughter. It clearly emphasizes the nature of the attack upon the administratrix as one arising out of her representative capacity. The objections to the account alleged that the administratrix had failed to include property which belonged to the decedent and which should have come into the possession of the administratrix. The specific securities were listed in a supporting schedule to the account, and further objection was made that the income thereon had not been included as an asset of the estate. The final decree on the accounting held that these securities " formed no part of the assets to be administered as a part of the estate of said decedent; that said administratrix is not chargeable therewith and is not accountable therefor." The decisions of the appellate courts confirmed the character of the proceeding in this court. Bad faith on the part of the administratrix and an unlawful diversion were charged by counsel for the daughter throughout the litigation and even in the brief of counsel for the daughter in the Court of Appeals. By stipulation of the parties, the reasonable value of the services has been fixed at the sum of $30,000. The imposition of that charge, whether against the estate or the widow's share, is left for me to determine. Under all the circumstances I hold that the amount fixed must be decreed to be a charge against the estate. That the widow may have been personally interested in the outcome of the litigation is only of secondary importance. Her good faith as an accounting fiduciary was the primary issue. There could be no doubt that had the claim been made that she failed to collect assets from a third person, she would have been entitled to reimbursement out of the estate for the expense of the litigation, if she had been successful.

No general rule as to the right of reimbursement or payment out of the estate has been laid down by the authorities. Necessarily, the distinctive circumstances of each estate must govern. The good faith of the fiduciary appears to be an essential test. Success in resisting. the attack upon the administration of the trust is an important consideration, but not an exclusive one. (*Matter of Hoffman*, 136 App. Div. 516; *Matter of Titcomb*, 80 Misc. 612.) The fact that the representative may personally profit by the litigation does not affect the allowance of the expenses out of the

estate. Thus, reimbursement was allowed in *Ellis* v. *Kelsey* (241 N. Y. 374, 382), where the executor and trustee were required to protect their individual rights and successfully overcame a charge of bad faith, an attempt to impose a high rate of interest against them and a denial of their fees and commissions. *Jessup* v. *Smith* (223 N. Y. 203) sustained the right of recompense by a trustee whose removal was sought, whereby commissions would have been lost to the trustee. In *Matter of Higgins* (80 Misc. 609) the status of the administratrix as the lawful widow of the decedent was involved in the proceeding to revoke letters. If she had been unsuccessful, she would have been deprived of her distributive share in the estate. Surrogate KETCHAM allowed the expenses of the litigation out of the estate because this unwarranted attack was primarily directed against her as administratrix. He declared that the disbursements were not less chargeable because they also served the personal interest of the administratrix who made them. *Matter of Ordway* (196 N. Y. 95) likewise recognizes this rule. There the administratrix was incidentally defending the reduction of her own share of the estate. The administratrix was allowed her expenditures for counsel fees up to a time when the defense continued to be necessary for the protection of the estate. After it became manifest that ultimate failure would result, the conditions changed, and reimbursement for the further expenses of the unnecessarily prolonged litigation was denied to her. " The difference between the cases is vital. Here the administratrix made a defense which under the law was proper. If it were ever proper its propriety continued until it ended in success. It, therefore, never could become unnecessary." (KETCHAM, S., in *Matter of Higgins, supra.*)

An additional reason for granting the relief sought by the administratrix here is found in the award of costs to her out of the estate by the decisions of the Appellate Division and Court of Appeals. The denial of such costs has been held to be an element for consideration. (*Matter of McDowell*, 202 App. Div. 568.) Their allowance should likewise be considered.

Submit decree on notice directing payment out of the estate of the amount fixed by the stipulation as the reasonable compensation for the professional services rendered.