## SHRIVER *v.* WOODBINE SAVINGS BANK.

No. 158. Submitted December 3, 1931.—Argued March 14, 15, 1932.—Decided April 11, 1932.

468

Messrs. *H. B. Claypool* and *W. E. Wallace,* with whom *Mr. James M. Parsons* was on the brief, for appellant.

Mr. J. A. Murray, with whom Messrs. H. L. Robertson and C. A. Bolter were on the brief, for appellee.

Mr. Earl F. Wisdom, Assistant Attorney General of Iowa, by leave of Court, for L. A. Andrew, Superintendent of Banking of Iowa, as amicus curiae. Mr. John Fletcher, Attorney General, was on the brief.

MR. JUSTICE STONE delivered the opinion of the Court.

Appellee, an Iowa banking corporation, brought suit in the courts of that State to enforce the personal liability of appellant, its stockholder, for an assessment made under the Iowa statutes, which provide for the restoration of any impairment of capital of a bank, by assessment pro rata of the stockholders. The case comes here on appeal, Jud. Code § 237, from a judgment of the Iowa Supreme Court sustaining the assessment and upholding the statute, which is assailed as infringing the contract and due process clauses of the Federal Constitution. 212 Ia. 196.

On different dates between 1891 and 1917, appellant acquired twenty-six shares of the capital stock of the appellee. Appellee, originally incorporated in 1891, was reincorporated in 1911, appellant acquiring a like number of shares in the new corporation. At that time the liability to assessment of the stockholders in the bank was controlled by §§ 1878, 1879, and 1880 of the 1897 Iowa Code, now appearing as §§ 9246–9250 of the 1927 Iowa Code. These sections authorize the superintendent of banks to require any impairment of capital of a state bank to be restored by an assessment upon its stockholders, as directed by an appropriate order of the superintendent, "fixing the amount of the assessment." Section 9247 imposes on the directors a duty to cause the deficiency in capital, thus determined, to be made good "by a ratable

assessment upon the stockholders, for the amount of stock held by them," and requires the proper officers of the bank, to give written notice of the assessment, addressed to the several stockholders, which " shall state the entire sum to be raised and the amount due from the addressed stockholder." Section 9248 provides:

" Should any stockholder neglect or refuse to pay his assessment within ninety days from the date of mailing notice thereof, the board of directors shall cause a sufficient amount of the capital stock held by such stockholder to be sold at public auction to make good the deficiency, after giving ten days' notice thereof by personal service or by posting the same in the bank, and publishing it in some newspaper of the county in which the bank is located, which notice shall recite the assessment made, the amount due thereunder from the stockholder, and the time and place of sale; proof of all which may be made in the manner provided in the preceding section."

After appellant had acquired his stock, a new section was added by the Act of March 13, 1925, c. 181, Iowa Laws, 1925, now § 9248–a (1) of the 1927 Iowa Code, reading as follows:

" Should the proceeds of a sale under the preceding section of all of the stock of any stockholder be insufficient to satisfy his entire assessment liability, he shall be personally liable for the deficiency, which may be collected by suit brought in the name of the bank against such stockholder."

Following the adoption of this later section, the Superintendent of Banks determined that appellee's capital had been impaired 100% and directed an assessment accordingly. Acting under § 9248, appellee's directors sold appellant's stock for $1.00 a share, and the present suit was brought to recover the deficiency.

In answer to the objection that the Act of 1925 subjected appellant to an unconstitutional burden, appellee

relies on the statutes antedating appellant's acquisition of his stock, as imposing on him personal liability to pay the assessment, without the aid of the quoted provision of the later Act. It also argues that even if there was no such liability under the earlier statutes, the adoption of the Act of 1925 was but an exercise of the power reserved to the legislature by § 12, Art. 8 of the Iowa Constitution, and by § 1619 of the 1897 Iowa Code (§ 1090 Iowa Code of 1873), providing that " the articles of incorporation, by-laws, rules and regulations of corporations hereafter organized . . . shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law. . . ." It is insisted that the power thus reserved embraces not only a legislative withdrawal of any grant of immunity to the stockholders of the bank, from liability for its debts, but extends to the imposition on 'them of a new and continuing liability to pay any assessment levied for the restoration of capital of the bank.

The Supreme Court of Iowa found it unnecessary to pass upon these contentions. Expressly disclaiming any purpose to decide either of them, it assumed, for purposes of decision, that under the earlier statutes the deficiency after sale of the stock could not be collected from the stockholder. It then proceeded to point out that from the beginning the authorized assessments were not upon the stock of the bank, but upon the stockholders personally, and said, 212 Iowa 196, 201, 202; 236 N. W. 10, 12:

"According to the original statute, the stockholder was personally and primarily liable for the assessment, and section 9248 and its predecessors had to do only with the remedy and nothing else. Then, assuming that the only remedy originally made for the collection of the assessment was to confiscate the stockholder's stock, nevertheless, so far as the remedy was sufficient, the stockholder was personally liable for the assessment. This burden

was cast upon the stockholder himself, even though the only remedy to enforce the obligation was by the sale of the stock. Consequently, appellant's obligation in the premises had not been increased. He was always obligated to pay the assessment. Of course, if he did not pay, the only remedy under the statute was to sell his stock; yet the obligation to pay was there just the same. Now, under the new legislation, the stockholder's liability has not been increased, but rather the remedy for enforcing that obligation has been changed. Were the remedy a part of appellant's contract, a change thereof would amount to an impairment. *Barnitz* v. *Beverly*, 163 U. S. 118; *Conley* v. *Barton*, 260 U. S. 677.

"Obviously in the case at bar, however, we are not confronted with a case where the remedy became a part of the contractual obligation. There is not a syllable in the statutory contract which in any way indicates that the remedy is a part of the agreement. It was not said by the legislature that there could be no other or different remedy. Hence it was perfectly proper for the law making body to adopt section 9248-a (1) of the 1927 Code, because such amendatory legislation pertained to the remedy only. The purpose of this legislative enactment was to afford a more appropriate remedy for an obligation already existing against appellant. Ever since becoming a stockholder of the appellee bank, he was obligated to pay any legal assessment made for the purpose of repairing the capital stock. This new legislation simply recognized that obligation and afforded a more complete remedy to enforce the same. No new obligation was created by the amendment, but rather the old was recognized and a better way to enforce it provided."

We find it unnecessary to answer the question implicit in this disposition of the case, whether an obligation can be said to exist apart from a remedy to enforce it—whether within the meaning of the contract clause any personal

obligation of a stockholder in the nature of a contract to restore his pro rata share of any impairment of the corporate capital, can be said to exist independently of some means or remedy for enforcing it in addition to the sale of his stock.

Nor are we called on to discuss here the suggestion that even though the sale of the stock was the only means of collecting assessments, the contract and due process clauses do not guarantee appellant against the selection and the application to him of any other remedy reasonably adapted to carrying out the policy and purpose plainly declared by the earlier statute, to require complete restoration of any impairment of corporate capital by assessment of the stockholders. See *Henley* v. *Myers*, 215 U. S. 373; *League* v. *Texas*, 184 U. S. 156, 158; *Graham & Foster* v. *Goodcell*, 282 U. S. 409, 426; *Milliken* v. *United States*, 283 U. S. 15, 20 *et seq.; People* v. *Adams State Bank*, 272 Ill. 277; 111 N. E. 989; *Irvine* v. *Elliott*, 203 Fed. 82, 96–97. For we conclude that appellant does not sustain the burden which rests on him of establishing that the later statute is unconstitutional because imposing a liability to which he was not subject under the earlier one.

In strictness, appellant presents no question of impairment of the obligation of contract, for it is not insisted that either party has been deprived by legislative action of any right or remedy secured by the statute in force when appellant acquired his stock. His objection is not directed to any such impairment of right or obligation. It is rather that the Act of 1925 imposed on him a personal obligation where none existed before, and that its imposition, by fiat of the law, after he had bought his stock, operates to deprive him of property without due process of law. See *League* v. *Texas, supra,* pp. 158, 161. This contention is, of course, without support if the liability to pay the full assessment declared by the earlier stat-

ute was then enforcible by any appropriate form of remedy. See *Pinney* v. *Nelson,* 183 U. S. 144, 147; *Whitman* v. *Oxford National Bank,* 176 U. S. 559; *Thomas* v. *Matthiessen,* 232 U. S. 221.

The Supreme Court of Iowa has given no authoritative answer to the question whether, before the Act of 1925, there was any remedy other than sale of the stock by which an assessment might be recovered from a stockholder. In the present case it did not decide the question, contenting itself with the observation that "the only remedy *under the statute* was to sell his stock." In two earlier cases, arising long after appellant acquired his stock, it had expressed the view that the only remedy for enforcing the payment of assessments was by sale of the shareholder's stock. See *Leach* v. *Arthur Savings Bank,* 203 Iowa 1052, 1057; 213 N. W. 772; *Andrew* v. *People's State Bank,* 211 Iowa 649; 234 N. W. 542, 546. But in neither was this statement necessary to the decision, nor did it have any bearing on the question actually decided. Both followed the passage of the Act of 1925. In no other cited case has the question been considered.

Where legislation is assailed as impairing the obligation of contract, this Court, in defining the scope of the constitutional immunity, will determine for itself what the contract is for whose protection the immunity is invoked. See *Appleby* v. *New York,* 271 U. S. 364, 379, 380. In the circumstances of this case, also, where the alleged infringement of the Fourteenth Amendment turns on the asserted non-existence of a contractual obligation to do that which the challenged statute exacts, appellant must satisfy this Court that he was not so bound. For, here, the nature and extent of his obligation depend upon the construction of a local statute which the highest court of the state has indicated by its latest decision is still open for determination. See *Brunswick Terminal Co.* v.

*National·Bank of Baltimore,.*192 U. S. 386, 392 *et seq.;* .cf. *Broad River Power Co.* v. *South Carolina,* 281 U. S. 537, 540.

The meaning of the sections now in question must be · ascertained in the light of the legislative policy of the state. They are· a part of its public laws, dealing with .a subject of public concern, the stability and solvency of state banking institutions. See *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111, 112; *Bank of Oxford* v. *Love,* 250 U. S. 603. Those laws confer on the Superintendent of Banks full authority to require a bank· to restore impairments of its capital. § 9235 Iowa Code of 1927 (§1572 ·Iowa Code of 1873). He may cause its liquidation if it refuses to comply with his order or is in an insolvent or unsafe condition, or the interests of creditors require it to be closed. §§ 9238, 9239 Iowa Code of 1927 (§ 1572 Iowa Code of 1873). The stockholders are· made individually liable to creditors, §§ 9251–9252 Iowa Code of 1927 (§ 1882 Iowa Code of 1897); and any bank, whether its charter has expired or not, may be dissolved by vote of three-fourths of the· stockholders. § 9277 Iowa Code of 1927 (§ 1857 Iowa Code of 1897).

These sections exhibit an unmistakable purpose to maintain the banks of the state in a solvent condition with capital unimpaired, which is specifically· given effect by §§ 9246–9248 of the 1927 Code. By these sections the appellant was made aware, when he acquired his stock, that in the event of any impairment of capital of the bank, the ·Superintendent of Banks was authorized to "require an assessment upon the stockholders" and to fix "the amount of the assessment required"; that the directors of the bank could be ordered· by· the Superintendent to "cause such a·deficiency to be made good by a ratable assessment upon the stockholders"; that the officers of the corporation were required to give notice to each stockholder of "the entire sum ,to be raised and the

amount due from the addressed stockholder "; and that after 90 days, allowed for the payment of the assessment, his stock might be sold upon an advertisement required to " recite the assessment made and the amount due thereunder from the stockholder." These are phrases importing legal liability. They define an obligation imposed by the statute upon the stockholders to pay the assessments to the bank, see *Whitman* v. *Oxford National Bank,* 176 U. S. 559, 562, by which alone the complete restoration of impaired capital, which is the legislative purpose, could be secured with certainty.

If no specific remedy of any kind had been provided to compel payment of assessments, there could be little doubt that the effect of these provisions would have been to create an obligation or liability, quasi-contractual in nature, on the part of stockholders acquiring their stock after the enactment, to pay to the bank a sum certain, that is, the assessment when made, for which the common law affords a remedy in debt or *indebitatus assumpsit* or its modern equivalent. See *Mills* v. *Scott,* 99 U. S. 25; *Whitman* v. *Oxford National Bank,* 176 U. S. 559; *Flash* v. *Conn,* 109 U. S. 371; *Bernheimer* v. *Converse,* 206 U. S. 516, 529; *Price* v. *United States,* 269 U. S. 492, 500; *United States* v. *Chamberlin,* 219 U. S. 250; *Meredith* v. *United States,* 13 Pet. 486, 493; *Steamship Co.* v. *Joliffe,* 2 Wall. 450, 457; *Converse* v. *Hamilton,* 224 U. S. 243, 253; *Farmers Loan & Trust Co.* v. *Funk,* 49 Neb. 353; 68 N. W. 520. See James B. Ames, Lectures on Legal History, Implied Assumpsit, 149, 161.

In the face of the sweeping language of the statute, the mere fact that it gave a remedy by sale of the stock cannot be taken as necessarily precluding resort to the common law remedy, which would otherwise be available and by which alone the liability declared could in many cases be successfully enforced. The summary remedy by a sale would often be a speedy and convenient alternative

method of enforcing the statutory liability to pay assessments. But it is not stated to be exclusive and its adoption involves no necessary inconsistency with the continued existence of a common law remedy for the recovery of the sum certain fixed by the assessment and declared to be due by the statute. In those instances where the impairment is more than 50% of the capital, the remedy by sale would be insufficient to enforce the liability declared. No reason is suggested why such a remedy should, by mere implication, be deemed exclusive or why the statute should be so construed by inference as to defeat its obvious purpose, or limit or destroy the liability which, in plain terms, it has created.

It is true that where a statute creates a liability and provides a remedy by suit specially adapted to its enforcement, other less appropriate common law remedies are impliedly excluded. See *Evans* v. *Nellis*, 187 U. S. 271; *Pollard* v. *Bailey*, 20 Wall. 520, 527; *Williamson* v. *American Bank*, 115 Fed. 793; cf. *Middletown Bank v. Railway Co.*, 197 U. S. 394. And in every case conditions precedent to the statutory liability must be satisfied before any form of remedy can be resorted to. *Fourth National Bank* v. *Francklyn*, 120 U. S. 747; *Middletown Bank* v. *Railway Co., supra; State National Bank* v. *Sayward*, 91 Fed. 443. But here the conditions of liability, the order of the Superintendent of Banks, the assessment by the directors, and the notice fixing the amount of appellant's obligation, have all been performed. Here, the remedy provided is a summary and only partially effective supplement or alternative to that which the common law affords for enforcing the obligation to pay a sum certain, which, when fixed by the prescribed assessment, is declared to be due and owing. The very fact that the remedy is on its face inadequate to compel full performance of the obligation declared, is persuasive that it was

not intended to be exclusive of applicable common law remedies, by which complete performance might be secured.

Administrative remedies for the collection of taxes, if not made exclusive by statute, do not preclude the recovery of the tax by a common law action of debt. *Price* v. *United States,* 269 U. S. 492, 500; *United States* v. *Chamberlin,* 219 U. S. 250, 262; *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 238–239; *Meredith* v. *United States,* 13 Pet. 486, 493; see *Stockwell* v. *United States,* 13 Wall. 531, 542. And in general the liability of stockholders to assessment under local statutes is deemed transitory in nature, enforcible by common law remedies in states other than that of the corporation, although special statutory forms of remedy given by the local statute could not be resorted to elsewhere. See *Whitman* v. *Oxford National Bank,* 176 U. S. 559; *Hancock National Bank* v. *Farnum,* 176 U. S. 640; *Hale* v. *Hardon,* 95 Fed. 747; *Rhodes* v. *United States National Bank,* 66 Fed. 512; *Dexter* v. *Edmands,* 89 Fed. 467.

The enactment of the statute of 1925, specifically authorizing a suit for the deficiency after the sale of the stock, served to remove any possible doubts and rendered certain what may previously have been thought by some to be uncertain. But it can hardly be taken to be a legislative determination that under the earlier statutes no common law remedy could be availed of for the collection of assessments. If not, mere variations of the remedy or the creation of new ones, even though more onerous, for the enforcement of a pre-existing obligation to pay assessments in full, are unobjectionable. See *Hill* v. *Merchants' Mutual Ins. Co.,* 134 U. S. 515; *League* v. *Texas,* 184 U. S. 156, 158; *Henley* v. *Myers,* 215 U. S. 373; *Conley* v. *Barton,* 260 U. S. 677.

In the absence of an authoritative construction by the state court of the statutes in force when appellant acquired

his stock, we cannot say that he was not personally liable for his pro rata share of any impairment of the bank's capital assessed against him while he remained a stockholder, whether his stock was sold under § 9248-a (1), or not, or that the later statute, which provided a remedy for enforcing such liability, infringed his constitutional rights.

*Affirmed.*