In the Matter of FRANK BAILEY et al., Petitioners, against BUSH TERMINAL COMPANY, Respondent.*

Supreme Court, Special Term, New York County, September 28, 1942.

*Holthusen & Pinkham* [*Henry F. Holthusen* and *Spencer Pinkham* of counsel], for Frank Bailey et al., petitioners.

*Kellogg, Emery & Inness-Brown* [*David Paine* and *Francis D. Kolosky* of counsel], for Title Guaranty & Trust Company, as Ancillary Executor, etc., of Edward T. Bedford, deceased, petitioner in companion application.

*Hays, St. John, Abramson & Schulman* [*Arthur Garfield Hays, John Schulman* and *Morris Shilensky* of counsel], for Bush Terminal Company, respondent.

WALTER, J. Directors of Bush Terminal Company successfully defended an action brought against them by a trustee of that corporation to hold them personally liable for having paid dividends out of capital in violation of section 58 of the Stock Corporation Law. (*Randall* v. *Bailey*, 23 N. Y. Supp. [2d] 173; affd., 262 App. Div. 844; affd., 288 N. Y. 280.) They now bring this proceeding, by petition and order to show cause, to have the court assess against the corporation the expenses to which they were put in making such successful defense, and the corporation moves to dismiss.

After the entry of the judgment of this court in the action so brought against the directors, but during the pendency of the trustee's appeals therefrom and before the entry of the judgment of either of the appellate courts, chapter 350 of the Laws of 1941, inserting section 61-a in the General Corporation Law, was enacted and took effect. So far as here material, it provides that the reasonable expenses incurred by directors in the successful defense of such an action " shall be assessed upon the corporation," and " awarded as special costs of the action " and be " recoverable in the same manner as statutory taxable costs; " and the first question presented is whether that statute is applicable to this case.

In enacting the statute the Legislature expressly provided: " This act shall take effect immediately and shall apply to all such actions, suits or proceedings as may be pending and in which no final judgment has been made and entered at the time this act takes effect." It thus made it plain that it intended the statute to operate retroactively at least to some extent, but, unfortunately, it used words of uncertain, or at least of double, meaning. No difficulty arises, I think, from the conjunctive use of the words " pending " and " final judgment," but difficulty is encountered in determining whether the Legislature intended the judgment by which the trial court makes its final adjudication of the issues or the judgment which is final in the sense that it ends the case beyond the possibility of further review, *i. e.*, the judgment of the highest court in which a decision could be had. If the judgment of the trial court were intended, then clearly the meaning is that an action is not

to be regarded as pending after the entry of that judgment; but if the judgment of the court of last resort were intended, then clearly the meaning is that an action is to be regarded as pending until all appeals are terminated.

Practically no help is obtainable from any of the myriad of cases in which the courts have struggled to define what is meant by the term " final judgment," for most of such cases, and most of the statutes in which the term is used, relate to the appealability of the judgment, and such is the elusiveness of our language that the same word " final " is used to express two totally different meanings. One meaning is that a judgment is appealable because it is the final adjudication of the court which renders it, but another meaning is that a judgment is final because it is not appealable. If, when the judgment of this court in the suit against the directors was entered, two lawyers discussed the possibility of appealing, they certainly would have said that that judgment was final. But if one of the successful directors had asked his counsel, " Is that final? " the answer by the same lawyers certainly would have been, " No, it is not, because it is subject to appeal." Even lawyers thus reject the idea of finality in reference to a judgment of a trial court except in the single instance in which they are considering the question of whether or not an appeal will lie, and I doubt if anyone not having the question of appealability specifically in mind ever would speak of an appealable judgment of a trial court as a final judgment. When, therefore, the Legislature uses the term " final judgment " in a statute having no relation to the right of appeal, I think it reasonable to suppose, in the absence of some token of a contrary intent, that it means that judgment which is final in the sense that it terminates the litigation because it is not subject to being reversed, *i.e.*, the judgment of the court of last resort.

Respondent purports to find in the frame and pattern of the statute an indication that by " final judgment " the Legislature meant the judgment of the trial court. The statute, urges respondent, does not create a general liability for expenses or provide a new cause of action for the recovery thereof, but merely establishes a new category of statutory costs to be allowed and taxed in the action wherein the director successfully maintains his defense, and costs can be awarded only in and by the trial court and as an incident of its judgment. I cannot accept that view. Costs are taxed every day as incidents of judgments of appellate courts, and they are taxed in the trial court. Furthermore, statutes regulating costs constitute a recognized exception to the usual rule against giving statutes a retroactive construction and costs generally are fixed according to the law in force at the time they are fixed (*Lubkin*

v. *Stern*, 286 N. Y. 670; *Defendorf* v. *Defendorf*, 42 App. Div. 166, 167), and while the essence of section 61-a is that the successful director shall' recover his expenses from the corporation, I think the fact that the procedure for obtaining such recovery was assimilated by the Legislature to a taxation of costs is an indication directly contrary to that urged by respondent.

There thus arises the question whether the statute constitutionally can be given the retroactive effect which I find the Legislature intended it to have.

Petitioners contend that independently of the statute they were and are entitled to have the corporation reimburse them for the expense of their successful defense and that the statute thus imposes no new obligation upon the corporation but merely affords a new or additional remedy for the enforcement of an existing obligation; and if that be so then of course the constitutional question disappears. (*Shriver* v. *Woodbine Bank*, 285 U. S. 467.) Whether so or not is, however, a debatable question. No authoritative decision exists. A careful opinion by an able judge says that it is not so (*New York Dock Co., Inc.*, v. *McCollum*, 173 Misc. 106, former Judge CROUCH, as referee), but that opinion apparently stands alone, the other cases cited as to the same effect being either wholly inapplicable or distinguishable upon the ground that in them the directors were not successful in their defense but either settled or lost (*Godley* v. *Crandall & Godley Co.*, 181 App. Div. 75; affd., 227 N. Y. 656; *Apfel* v. *Auditore*, 223 App. Div. 457; affd., 250 N. Y. 600; *Monahan* v. *Kenny*, 248 App. Div. 159; *Kirby* v. *Schenck*, 25 N. Y. Supp. [2d] 431; *Heller* v. *Boylan*, 29 id. 653, 694), and over against the opinion of Judge CROUCH there is the general principle that faithful fiduciaries are to be indemnified out of the trust property for their necessary expenses. (*Corn Exchange Bank Trust Co.* v. *Bankers Trust Co.*, 268 N. Y. 224, 227; *Matter of Maxwell*, 218 id. 88, 90; *Ellis* v. *Kelsey*, 241 id. 374; *Jessup* v. *Smith*, 223 id. 203; *Schoenherr* v. *Van Meter*, 215 id. 548, which related to a director; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 id. 27; *Downing* v. *Marshall*, 37 id. 380, 388; *Matter of Ungrich*, 201 id. 415, 419, which related to an action to remove for misconduct; *Matter of Van Volkenburgh*, 139 Misc. 437; *Matter of Young*, 156 id. 801, 803, 804.) Some of the cases stating that principle refer to the element of " benefit " to the trust estate, and under some circumstances it undoubtedly is necessary that something of value be brought before the court in order that there may be a fund out of which an allowance for expenses can be made, but that the principle is not confined to cases where the incurring of the expense has of itself brought property into the trust is entirely clear and is

particularly manifest from such cases as *Jessup* v. *Smith*, *Matter of Ungrich*, *Matter of Van Volkenburgh*, and *Matter of Young*, (all *supra*), in which in a very substantial sense the expense was incurred in protecting what was in essence the personal interests of the fiduciary. Furthermore, the principle of indemnity has even been applied where a trustee has been subjected to liability to a third person because of his own tort, if not involving wilful misconduct. (*Matter of Lathers*, 137 Misc. 226, cited in *Kirchner* v. *Muller*, 280 N. Y. 23, 28; 2 Scott, Trusts, § 247.)

That the law of New York respecting a corporation's obligation to reimburse directors had not been authoritatively settled prior to the enactment of section 61-a has an important bearing upon the constitutionality of a retroactive application of that statute, and as the point is now settled by that statute, it seems appropriate to consider the constitutional question rather than undertake now to make a definitive decision respecting what the law was before the statute was enacted.

Except for *ex post facto* laws (a phrase long settled as referring only to penal laws [*Calder* v. *Bull*, 3 Dall. 386; *Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140, 152, 153; *Bankers Trust Co.* v. *Blodgett*, 260 id. 647, 652]), and laws impairing the obligation of contracts, with neither of which we are here concerned, neither the Federal Constitution nor the Constitution of New York contains any prohibition against retroactive laws as such (*Baltimore & Susquehanna R. R. Co.* v. *Nesbit*, 51 U. S. 395, 401; *League* v. *Texas*, 184 id. 156, 161; *Brearley School* v. *Ward*, 201 N. Y. 358, 363), but retroactive laws may be invalid under the due process of law clauses of both Constitutions (*Ochoa* v. *Hernandez*, 230 U. S. 139, 161, 162; *Nichols* v. *Coolidge*, 274 id. 531; *Untermyer* v. *Anderson*, 276 id. 440; *Coolidge* v. *Long*, 282 id. 582; *People ex rel. Beck* v. *Graves*, 280 id. 495; *Matter of Lacidem Realty Corp.* v. *Graves*, 288 id. 354), and, as I believe, under the equal protection of the laws clauses also. (See *Welch* v. *Henry*, 305 U. S. 134.) Laws which attempt retroactively to create a liability in relation to a transaction as to which no liability previously had attached generally are so arbitrary, harsh, and oppressive that it is perhaps accurate to say of them that they are presumptively invalid (See *Graham & Foster* v. *Goodcell*, 282 U. S. 409, 426), but too numerous and varied are the instances in which such laws have been sustained to permit the broad generalization that such laws necessarily are unconstitutional. (*Danforth* v. *Groton Water Co.*, 178 Mass. 472, 477, quoted in *Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271, 277.)

Various attempts have been made to draw broad distinctions to differentiate between valid and invalid retroactive laws, such, for

example, as those which relate to remedies and those which relate to substantive rights, those which affect non-vested as distinguished from vested rights, those which cure non-jurisdictional defects as distinguished from jurisdictional defects, those which validate the invalid and those which invalidate the valid; but while not wholly useless such broad distinctions invariably break down at one point or another, and no amount of blinking can obscure the fact that even so-called " remedial " statutes may in effect impose a liability where none existed before (See *Jacobus* v. *Colgate*, 217 N. Y. 235) and that even so-called " curative " or " enabling " or " validating " statutes either do the same thing or else destroy rights which are vested in every sense except that the court has allowed the retroactive statute to divest them. (See, for an exceptionally able and constructive discussion, Smith, Retroactive Laws and Vested Rights, 5 Texas L. Rev. 231; 6 id. 409; reprinted in 2 Selected Essays on Constitutional Law, pp. 266–300.) The true approach, the one I take to be the one now adopted in authoritative cases, seems to me to be to refuse to judge retroactivity in the abstract or *per se* and appraise the operation and effect of the statute with a view to all its elements, including but not viewing alone its retroactivity, and determine from the entire setting whether its operation and effect in that particular setting are so harsh, arbitrary, and oppressive, as to constitute a denial of due process of law (or of the equal protection of the laws); and that seems to me but another way of repeating that the test of constitutionality is not an absence of retroactivity but an absence of a denial of due process or of equal protection. (*Milliken* v. *United States*, 283 U. S. 15; *McNair* v. *Knott*, 302 id. 369, 372, 373; *Welch* v. *Henry*, 305 id. 134, 146; *Carpenter* v. *Wabash Ry. Co.*, 309 id. 23; *Paramino Co.* v. *Marshall*, 309 id. 370, 378, 379; *Funkhouser* v. *Preston Co.*, 290 id. 163, affg. 261 N. Y. 140; *Shriver* v. *Woodbine Bank*, 285 U. S. 467; *People ex rel. Beck* v. *Graves*, 280 N. Y. 405; *Matter of Lacidem Realty Corp.* v. *Graves*, 288 id. 354.)

Some of the cases last cited were cases in which retroactive tax statutes were sustained to the extent that they were not regarded as harsh, arbitrary, and oppressive. Others dealt with other than tax statutes. In *McNair* v. *Knott* a statute making valid an otherwise invalid pledge of assets of a bank as security for public deposits was sustained, although obviously the effect was to subject the bank's assets to a liability which previously did not rest upon them and to deprive the bank's receiver of an otherwise perfect right to get possession of those assets and apply them to the payment of the bank's creditors. In *Carpenter* v. *Wabash Ry. Co.* a statute giving priority in equity receiverships of railroad cor-

porations to claims of employees for personal injuries was given retroactive effect even to the extent of according priority to a claim of that character which had been denied priority in the lower courts in accordance with the then existing law, although obviously the effect was to postpone, if not entirely defeat, other claims which previously were not subject to such personal injury claims; and in *Paramino Co.* v. *Marshall* that ruling was explained and approved as resulting from the " superior equities " of the injured employees. In *Funkhouser* v. *Preston Co.*, a statute of this State providing for the allowance of interest on unliquidated claims was sustained as applicable to a claim for unliquidated damages for breach of a pre-existing contract, the courts stressing the fact that the law as to interest at the time the contract was made was not clear or certain and that the subject was " an appropriate one for legislative action in order to provide a definite rule " (290 U. S. 163, 168).

Considering section 61-a in the way indicated, I think it impossible to say that its application to this case is either harsh or arbitrary or oppressive or unjust. The statute is general in its operation, *i.e.*, a true law and not a legislative fiat designed to hit a particular corporation. It does not overturn a settled rule of law established by prior statute or authoritative decision upon which reliance has been placed in shaping conduct and adjusting expectations, and hence is not a bolt from the blue without notice or warning. It does not undertake to affect relations between persons who had no previous relations with each other; it affects only the relations of corporations with their own directors. It does not attempt to reach into the distant past; it goes back no further than actions not finally determined when it was enacted. Finally, it deals with a subject appropriate for legislative action in order to provide a definite rule.

It is, indeed, perhaps not too much to say that it was the decision in *New York Dock Co., Inc.*, v. *McCollum* (173 Misc. 106), which took many directors and others by surprise when it was announced in July, 1939; but in any event all we have here is that within a comparatively short time the Legislature took up the problem and, within perhaps as short a time as appeals in the *Dock Company* case could have been determined, solved it in a way which accords with the conclusion reached in New Jersey without statutory aid and largely upon the authority of principles stated by our own Court of Appeals (*Solimine* v. *Hollander*, 129 N. J. Eq. 264, citing *Jessup* v. *Smith*, 223 N. Y. 203) and with respectable views elsewhere expressed (*Washington, Litigation Expenses of Corporate Directors in Stockholders' Suits*, 40 Col. L. Rev. 431, 432), and which certainly cannot be said to offend rudimentary conceptions of justice.

The statute clearly is not a legislative determination that under previously existing law no right of reimbursement existed (*Shriver* v. *Woodbine Bank*, 285 U. S. 467, 479), but rather a legislative determination to settle in the way the Legislature regarded as wise a point previously uncertain. (*Funkhouser* v. *Preston Co.*, 290 U. S. 163.)

It is to be noted further that the statute relates solely to the administration of corporate property as between corporations and their directors and thus in effect is an exercise of the reserved power to alter and amend corporate charters ( *Phillips Petroleum Co.* v. *Jenkins*, 297 U. S. 629, 634, 635; *N. Y. C. & H. R. R. R. Co.* v. *Williams*, 199 N. Y. 108, 119); and that it is not invalid because it adds counsel fees to ordinary costs is clear. (*Life & Casualty Co.* v. *McCray*, 291 U. S. 566, 569.)

Respondent urges a point respecting procedure which I think without merit. If petitioners were seeking to recover upon a cause of action at common law or in equity they doubtless would have to proceed in the usual way by action rather than by a special proceeding (*Matter of Italian Discount & Trust Co.*, 214 App. Div. 202; *Matter of Federman*, 149 Misc. 4), but I am sustaining their petition solely as one under a statute. The normal application of the statute undoubtedly will be in derivative actions by stockholders in which the corporation is a party, and in such cases the director's right of reimbursement undoubtedly will be enforced by motion in the action; but the statute also extends the right of reimbursement to suits by trustees, and in suits by trustees it frequently may happen, as, in fact, happened in this instance, that the corporation to make the reimbursement is not a party to the action against the directors, and in such cases the right of reimbursement may and perhaps must be enforced by means of a special proceeding. (*Marvin* v. *Marvin*, 78 N. Y. 541; *Geary* v. *Geary*, 272 id. 390, 397; *Rosenberg* v. *Rosenberg*, 259 id. 338; *Geller* v. *Flamount Realty Corp.*, 260 id. 346, 349, 350.)

The motion to dismiss the petition is denied, with leave to respondent to answer within ten days.