[Sac. No. 5691. In Bank. Aug. 9, 1946.]

THE PEOPLE, Appellant, v. SANTA FE FEDERAL SAVINGS AND LOAN ASSOCIATION (a Corporation), Respondent.

Robert W. Kenny, Attorney General, and John L. Nourse and Daniel N. Stevens, Deputies Attorney General, for Appellant.

Surr & Hellyer for Respondent.

THE COURT.—Following the decision adverse to the respondent by the District Court of Appeal, the taxpayer's petition for a hearing by this court was granted for the principal purpose of considering the direction to the superior court to enter judgment for the state. Subsequently, the attorney general rested his case upon the sole issue as to whether under the Bank and Corporation Franchise Tax Act, as it read in

1939, a taxpayer was entitled to file a protest with and have a hearing before the Franchise Tax Commissioner as a condition precedent to the levy of an assessment levied upon the ground of fraud. As the District Court of Appeal correctly construed the sections of the statute applicable to the one question now presented for decision, that part of its opinion is adopted as the opinion of this court. It reads as follows:

"The State of California, through the Franchise Tax Commissioner, instituted this action to recover from defendant and respondent the sum of $21,212.76, together with interest thereon at the rate of 6 per cent per annum from March 15, 1935. The complaint alleged that defendant was a corporation engaged in lending money on security of real estate and was subject to the provisions of the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19; Deering's Gen. Laws, 1937, Act 8488) ; that on March 1, 1935, defendant filed its franchise tax return for 1935 and therein deducted from income of $176,773 a purported loss arising from a sale to one John C. Ralphs, and by reason of such deduction reduced its franchise tax liability from $14,466.85 to $325; that the sale was a sham and was fraudulent and was made to establish a fictitious loss and with intent to evade the tax; that about May 1, 1939, the Franchise Tax Commissioner discovered that the sale was fraudulent and made with intent to evade franchise taxes, and that the state was defrauded of $14,141.84; that on July 19, 1939, he issued and mailed to defendant an assessment against it of said amount; and that on July 3, 1940, the commissioner, having determined that the deficiency of $14,141.84 was due to fraud and was the result of intent of defendant to evade the tax, assessed a penalty of 50 per cent of the deficiency, pursuant to section 24(b) of the act, and thereupon mailed defendant a notice thereof.

"There was no demurrer to the complaint. A demurrer would have tested the legal questions now before this court. However, respondent chose to answer, and insofar as it is material to a determination of this appeal, its answer denied the fraud and set up several separate defenses, namely: That no notice of proposed additional tax was ever mailed or given as required by section 25 of the act; that the assessment was arbitrarily made without notice and without allowing defendant any opportunity to protest or be heard and therefore was made without authority of law and is wholly void; that within

60 days after the Franchise Tax Commissioner mailed notice of the additional assessment, defendant served the commissioner with a written protest under oath against the levy of the additional tax, in which protest it requested an oral hearing, and that the commissioner never acted upon such protest and request; that the additional assessment had not become final because of the failure of the commissioner to grant the requested oral hearing, and that such hearing was a necessary prerequisite to the institution of the action. It also invoked the provisions of subdivisions 1 and 4 of section 338, subdivision 2 of section 340, and section 343, of the Code of Civil Procedure.

"Upon the trial of the action evidence was introduced by both parties, and at the conclusion the trial court filed a written opinion in which it stated: 'It seems to the Court that there can be no question but that the purpose of the purported sale to Ralphs was merely an attempt to avoid payment of the tax to the State. . . . As a matter of fact, it has been frankly admitted that one of the reasons for the conveyance was to avoid payment of the franchise tax . . . and the so-called sale was in fact no sale at all, but a pretended sale and a sham'; and in that opinion the evidence supporting its conclusion that fraud had been intentionally committed by defendant was reviewed. However, judgment was rendered for defendant on procedural grounds, the court concluding that the provisions of section 25 of the act were applicable, that defendant was entitled to notice of the proposed additional assessment and to a hearing thereon before the commissioner as a prerequisite to the filing of the action, and that no such hearing having been granted, defendant was entitled to judgment.

"The paramount question on this appeal is whether defendant was entitled to such administrative hearing before action brought.

"Section 25 of the act, during the period involved in this action, provided that upon the filing of an original return the commissioner should examine it and if he determined that the tax disclosed was less than that disclosed by his examination, he should mail notice to the taxpayer of the additional tax proposed to be assessed, said notice to set forth the details of the proposed additional assessment; that within 60 days after mailing of said notice the taxpayer might file a written

protest under oath against the levy of the additional tax, specifying the grounds of protest; that if no protest was so filed the amount of the tax should be final upon the expiration of 60 days, but if protest were filed it should be the duty of the commissioner to reconsider the computation and levy, and if so requested, grant to the taxpayer an oral hearing; that the commissioner's action after such hearing should be final after 30 days from date of mailing notice thereof to the taxpayer unless appeal was taken to the Board of Equalization; that upon such appeal the board should hear and determine same, its determination to be final upon the expiration of 60 days. Said section also provided that *except in the case of a fraudulent return,* every notice of additional tax proposed to be assessed should be mailed to the taxpayer within three years after filing of the return, and, if not so mailed, no deficiency should be assessed or collected with respect to the year for which said return was filed. Section 28 of said act then provided:

" 'In the event that fraud or evasion on the part of a taxpayer is discovered by the commissioner, he shall have the power and it shall be his duty to determine the extent to which the state has been defrauded and to compute and charge against the taxpayer a tax in that amount which shall be immediately due and payable.'

"The state contends that since fraud was discovered the commissioner had the power, under section 28, to make the additional assessment without giving defendant a hearing and that the provisions of section 25 did not apply. Defendant argues that the commissioner must, in all cases, follow the procedure outlined in section 25, and that the act is unconstitutional if no right to an administrative hearing is given.

"The trial court's findings and its opinion indicate that its judgment was based upon a conclusion that under the statute respondent was entitled to an administrative hearing under section 25 in all such cases. The reasoning of the court seems to be based upon the language of section 31 of the act as it read before its amendment in 1939, as it said, in substance, that a taxpayer could not be said to be 'delinquent' when he had had no notice that he was charged with the payment of the tax imposed by the commissioner; and that authority to bring an action such as this was dependent upon the delinquency of the taxpayer.

■ "Section 31, as it read before the 1939 amendment provided:

" 'At any time within three years after *the delinquency of any tax,* penalties, and interest, or any installment thereof, the commissioner may bring an action in a court of competent jurisdiction in the county of Sacramento, in the name of the people of the State of California to collect the amount delinquent, together with penalties, and interest. . . . In such action a writ of attachment may be issued, and no bond or affidavit previous to the issuing of said attachment is required. In such action a certificate by the commissioner showing the delinquency shall be prima facie evidence of the levy of the tax, penalties, and interest, of the delinquency and of compliance by the commissioner and the State Board of Equalization with all the provisions of this act in relation to the computation and levy of the tax.' (Italics added.)

"But said section refers to the delinquency of the tax and not of the taxpayer; and the word 'delinquent,' as used in statutes relating to taxation, means nothing more than 'overdue' and 'unpaid.' (*Jenswold* v. *Minnesota Canal Co.,* 93 Minn. 382 [101 N.W. 603, 604]; *Casareto* v. *Johnson,* 63 S.D. 460 [260 N.W. 705, 707]; *Ryan* v. *Roach Drug Co.,* 113 Okla. 130 [239 P. 912, 918]; *Tallman* v. *Board of Commissioners etc. Dist.,* 185 Ark. 851 [49 S.W.2d 1039, 1040].) ■ And as under section 28 the tax became 'immediately due and payable' when the commissioner, after discovery of the fraud, had computed and charged it against the taxpayer, the tax was delinquent from and after that date. ■ The provision of section 28, that where the state has been defrauded the tax shall become *'immediately due and payable,'* indicates that the Legislature intended that the commissioner should act in a more summary manner in cases of fraud. If it had intended that the provisions of section 25 should apply where fraud was discovered, it would not have provided that the tax should become immediately due, since, where proceedings are had under section 25, the tax does not become immediately due, but only after the expiration of the time allowed for protest, and not then if protest be filed, for it provides that 'When a deficiency has been determined and the tax has become final *under the provisions of this section,* the commissioner shall mail notice and demand to the taxpayer for the payment thereof, and such tax shall be *due and payable at the expiration of ten days* from the date of such notice and demand.'

(Italics ours.) ▇ Also the provision that *except in the case of a fraudulent return* every notice of additional tax proposed to be assessed should be mailed to the taxpayer within three years after the return was filed and no deficiency should be assessed or collected unless such notice was mailed within such period, indicates an intention that a different course was to be pursued in case of fraud. It is entirely reasonable that the Legislature should have provided a different procedure in such cases, since summary action against those who have resorted to fraud in order to deprive the state of taxes justly due, may well be necessary to protect the state and to enable it to take immediate steps to protect its revenues by suit and attachment or by seizure and sale. For it is not unfair to assume that a taxpayer who has resorted to fraud in the making of its return might resort to delaying tactics in order to dispose of or encumber its assets to defeat collection.

▇ "As for respondent's argument that the act is unconstitutional if no right to an administrative hearing is provided, while it is doubtless true that a taxpayer, if he demands it, is entitled to a hearing at some stage of the proceedings for the collection of a tax, an administrative hearing is not such a prerequisite unless made so by statute. Constitutional requirements are met if a taxpayer is given an opportunity for a hearing in subsequent proceedings for collection of the tax or in an action for a refund where it is provided by the statute that he may pay the tax under protest and sue for its recovery. Both proceedings are provided for in the act under consideration. Section 30 provides for the latter course, and section 31 for the former, which was pursued here.

"In *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U.S. 526 [16 S.Ct. 83, 40 L.Ed 247], the court held that the Constitution of the United States was satisfied if an opportunity was given to question the validity of a tax either before the amount was determined or in subsequent proceedings for its collection. That case is cited in *Weyerhaueser* v. *Minnesota,* 176 U.S. 550 [20 S.Ct. 485, 44 L.Ed 583]. Also, see, *McMillan* v. *Anderson,* 95 U.S. 37 [24 L.Ed 335]; *People* v. *Skinner,* 18 Cal.2d 349 [115 P.2d 488, 149 A.L.R. 299], and cases therein cited; *State Tax Commissioner* v. *Board of Supervisors,* 43 Ariz. 156 [29 P.2d 733, 739]; *Powell* v. *Gleason,* 50 Ariz. 542 [74 P.2d 47, 51-52, 114 A.L.R. 838].

"*Central of Georgia Ry. Co.* v. *Wright,* 207 U.S. 127 [28 S.Ct. 47, 52 L.Ed. 134], is relied upon by respondent. There actions were begun by the railroad company to enjoin the enforcement of executions issued for taxes assessed on shares of the stock of a railway company owned by plaintiff. Respondent reads that case as holding that an administrative hearing was essential; but such was not the decision, for there the decision of the comptroller as to valuation was, by the statute, made conclusive unless it could be shown that he had acted in bad faith. There was no provision for relief in the courts upon proceedings brought to collect the taxes, or by bill to enjoin their collection. The opinion states, page 141 (L.Ed. p. 143):

" 'As we have seen, the system provided in Georgia by the statutes of the state as construed by its highest court requires of the taxpayer that he return all his property, whether its liability is fairly contestable or not, upon pain of an *ex parte* valuation, against which there is no relief in the tax proceedings *or in the courts,* except in those cases where fraud or corruption can be shown in the action of the assessing officer.' (Italics added.)

"In that very case the court cited *Security Trust & S. V. Co.* v. *Lexington,* 203 U.S. 323 [27 S.Ct. 87, 51 L.Ed. 204], stating that it had been there held that, before an assessment of taxes could be made upon omitted property, notice to the taxpayer, with an opportunity to be heard, was essential; that somewhere during the process of the assessment the taxpayer must have an opportunity to be heard, and that this notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace; but it further held that where the procedure in a state court gave the taxpayer an opportunity to be heard upon the value of his property and extent of the tax, in a proceeding to enjoin its collection, the requirement of due process of law was satisfied.

"Furthermore, since 1933 section 31 has provided that the remedies therein set forth shall be cumulative. It states:

" 'It is expressly provided that the foregoing remedies of the State shall be cumulative and that no action taken by the commissioner shall be or be construed to be an election on the part of the State or any of its officers to pursue any remedy hereunder to the exclusion of any other remedy for which provision is made in this act.'

"It is said in Bouvier's Law Dictionary that 'A cumulative remedy is one created by statute in addition to one which still remains in force.' Also in 3 Cooley, Taxation, 4th ed., p. 2633, section 1332, it is stated: 'If two or more statutory remedies are provided for, one of them being a personal action to collect the tax, it is generally held that the remedies are cumulative.' In *Shriver* v. *Woodbine Savings Bank*, 285 U.S. 467, 479 [52 S.Ct. 430, 76 L.Ed. 884, 892], the court said: 'Administrative remedies for the collection of taxes, if not made exclusive by statute, do not preclude the recovery of the tax by a common law action of debt.' Also, see, *Commissioner of Banks* v. *Highland Trust Co.*, 283 Mass. 71 [186 N.E. 229, 231]. In *United States* v. *Chamberlin*, 219 U.S. 250, 262-263 [31 S.Ct. 204, 55 L.Ed. 204, 210], the rule is thus stated: 'A tax may or may not be a "debt" under a particular statute, according to the sense in which the word is found ot be used. But whether the government may recover a personal judgment for a tax depends upon the existence of the duty to pay, for the enforcement of which another remedy has not been made exclusive.'

"The foregoing rule was adopted by our Supreme Court in *Scripps Memorial Hospital* v. *California Employment Commission*, 24 Cal.2d 669, 673 [151 P.2d 109, 155 A.L.R. 360]. That case involved the question of whether the plaintiff, which had paid a tax and was suing for its recovery, was compelled to pursue a course before the commission before it was entitled to institute an action at law. In deciding the matter the court said:

" 'Section 45.5, which was added to the act in 1939, provides that an employer against whom an assessment has been made may ask for a reassessment but it is not provided that this must be done before any other relief will be available. On the other hand, section 45.10, which was added to the act in the same year, expressly provides that any employer may pay any contribution sought to be collected under protest and may then bring an action to recover the amount thus paid.

" 'If it may be said that there was here an administrative remedy provided by this statute and by the rules of the commission which was available to the respondent it cannot be said that that remedy was exclusive or that its exercise was a necessary precedent to the use of the other remedy expressly given by the statute. None of the cases cited in support of

the usual rule go to the extent of holding that that rule applies as against another remedy expressly provided in the same statute, which creates the administrative remedy. It would be somewhat illogical to require one who claims an exemption from such an assessment to follow a procedure in which he must ask for a pretended reassessment before he may follow the direct remedy applicable to his case which is also provided in the same statute and expressly made available to him. While the Legislature could have so provided we cannot believe that it intended to do so here. The right to pay under protest and bring such an action is directly given in this statute without qualification, and it is not for the courts to add conditions to the exercise of that right which are not imposed by the statute. Assuming that an administrative remedy existed the most that can be said is that alternative remedies were available to the respondent, and the court correctly refused to grant the motions to dismiss.'

·''Respondent seems to take the position that because it was not granted a hearing pursuant to the provisions of section 25 of the act, it has not been granted a hearing at all. But such is not the case. It has not paid the tax, and in the action filed by the state for its collection it has been afforded and has taken full advantage of an opportunity to be heard. The issue of fraud was raised in plaintiff's complaint, and in its answer respondent not only denied the fraud but set up six separate defenses; and both parties produced evidence on the issues tendered. Therefore it cannot be said that the act is unconstitutional as depriving respondent of an opportunity to be heard on the issue of fraud as fully as if it had been granted an administrative hearing.''

The respondent now strongly relies upon the action of the Legislature of 1945 in amending the taxing statute. By that enactment, which became effective after the briefs were filed in the District Court of Appeal, section 28 was amended to read as follows:

''(a) If any taxpayer files a false or fraudulent return, or fails or neglects to file a return, with intent to evade tax, the commissioner, at any time, may require a return, or a supplementary return, under oath, or may make an estimate of the net income from any available information, and may propose to assess the amount of tax, interest and penalties due under this act. All the provisions of this act relative to

delinquent taxes shall be applicable to the tax, interest and penalties computed hereunder.

"(b) When any assessment is proposed under the preceding paragraph, the taxpayer shall have the right to protest the same and to have an oral hearing thereon if requested; also to appeal to the board from the commissioner's action on the protest; the taxpayer must proceed under this paragraph in the manner and within the time prescribed by Section 25." (Stats. 1945, ch. 946; 3 Deering's Gen. Laws, 1945 Supp., Act 8488, p. 103.)

The respondent argues that this amendment is a clarification of the statute as originally enacted. But the new provision is quite different from the section as it stood at the time the Franchise Tax Commissioner levied his assessment. The 1945 enactment not only gives the taxpayer the right to a hearing in accordance with the procedure specified by section 25, but substitutes for the previous authorization of a "charge" which became "immediately due and payable," a provision for particular steps to be followed by the commissioner which are consistent with the new requirement.

▇ Ordinarily, any substantial amendment of a statute indicates a legislative intention to change the meaning of the enactment rather than to interpret it. (*Whitley* v. *Superior Court,* 18 Cal.2d 75 [113 P.2d 449]; *Young* v. *Three for One Oil Royalties,* 1 Cal.2d 639 [36 P.2d 1065].) The very fact of amendment evidences a desire to change the existing law. (*Loew's Inc.* v. *Byram,* 11 Cal.2d 746 [82 P. 2d 1].) But insofar as the legislation now in controversy is concerned, the conclusion as to legislative intent need not rest solely upon these fundamental principles of statutory construction. When the bill to amend section 28 was being considered by the senate, the purpose of the proposed measure was stated by the Franchise Tax Commissioner as follows: "Amendment proposes to treat fraudulent assessment in the same manner as a deficiency assessment. Under the present act, taxpayer must pay immediately upon receiving the assessment without right of protest, etc. Amendment changes present law." (Senate Daily Journal, 56th Session, May 22, 1945, pp. 3017, 3020.) Presumably the Legislature acted to carry that purpose into effect.

Under these circumstances, it appears beyond question

that the Legislature of 1945 broadened the taxing statute to give rights additional to those which the taxpayer had at the time the assessment was levied against the respondent. This is a change of policy which does not affect the present litigation.

The judgment is reversed.