Norberto T. AGUSTIN, M. D., Plaintiff,

v.

Arthur F. QUERN, Director, Illinois Dept. of Public Aid, Defendant.

No. 76 C 1646.

United States District Court,
N. D. Illinois, E. D.

Oct. 27, 1978.

Ellis E. Reid, Chicago, Ill., for plaintiff.

James C. O'Connell, Asst. Atty. Gen., Chicago, Ill., for defendant.

## DECISION

McMILLEN, District Judge.

On June 19, 1978, plaintiff filed an Amended Complaint substantially different from his original complaint in this case. The only remaining defendant is Arthur Quern, Director, Illinois Department of Public Aid (I.D.P.A.). Plaintiff still purports to challenge the procedures leading to his termination as a Medicaid vendor as being violative of the constitutional guarantees of due process. In light, however, of the Illinois Supreme Court's decision in *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540, 12 Ill.Dec. 600, 370 N.E.2d 223 (1977) (holding that the Director of I.D.P.A. lacks authority to terminate a Medicaid vendor), and the Illinois legislature's subsequent passage of amendatory legislation (codified in pertinent part in *Supplement* to *Ill.Rev.Stat.* (1977), ch. 23, §§ 12–4, 12–4.25, –4.26 and –4.27), plaintiff alleges a new constitutional deprivation. He contends that the sections of the amendatory act which provide for retroactive application of certain of its provisions themselves authorize a deprivation without due process of law and should be declared unconstitutional. See *Supplement* to *Ill.Rev.Stat.* (1977), ch. 23, §§ 12–4.26, –4.27.

Although plaintiff styles his pending motion "Motion for Default, Preliminary Injunction, and Declaratory Judgment," before the court essentially are cross motions for summary judgment. The parties do not dispute the material facts. As will be demonstrated herein, defendant is entitled to judgment as a matter of law.

1. *Constitutionality of Sections 12–4.26 and –4.27.* When this case first came before the court on plaintiff's motion for summary judgment, all constitutional issues were eclipsed by the Illinois Supreme Court's decision in *Bio-Medical Laboratories, Inc. v. Trainor, supra* p. 442, which squarely held that the Director of I.D.P.A. was acting *ultra vires* in terminating a Medicaid vendor. As noted above, the Illi-

nois legislature in effect has overruled this decision by explicitly according the Director of I.D.P.A. the power to terminate Medicaid vendors who do not meet certain standards of performance. Plaintiff characterizes defendant's *ex post facto* ratification of his termination pursuant to this statute as unconstitutional.

The Director's power to terminate a vendor specifically arises only subsequent to the effective date of the Act, December 1, 1977. Section 12–4.26. However, he is empowered to rely on conduct of the vendor prior to the effective date, provided that "the vendor had actual or constructive knowledge of the requirements which applied to his conduct or activities." *Id.* Moreover, factual determinations made following administrative hearings may be relied upon by the Director in this regard, even if they occurred prior to the effective date. § 12–4.27. Plaintiff first challenges the general constitutionality of this limited retroactivity. He also challenges the standards by which defendant evaluated his performance as a Medicaid vendor as void for vagueness. Neither of these contentions is effective when applied to the case at bar.

▮ Even a wholly retroactive amendatory act would be constitutional. As the Supreme Court recently reiterated in *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17 & n. 13, 97 S.Ct. 1505, 1515 & n. 13, 52 L.Ed.2d 92 (1977), it is settled that the prohibition against a state's enacting an *ex post facto* law (United States Constitution, Article I, § 10, cl. 1) applies only to penal statutes: "The Due Process Clause of the Fourteenth Amendment generally does not prohibit retrospective civil legislation, unless the consequences are particularly 'harsh and oppressive.'" (fn. 13). Termination as a Medicaid vendor is neither harsh nor oppressive, in the sense referred to. See also *United States v. Nasser,* 476 F.2d 1111, 1117 (7th Cir. 1973) (disqualification from practicing profession not punishment where imposed to protect the public). The foregoing cases do not necessarily apply to contractual rights, but none are alleged in this case.

▮ The standards to which plaintiff was held as a Medicaid vendor are not void for vagueness. Plaintiff's reliance on cases in which criminal statutes were held unconstitutionally vague is misplaced. Upholding the constitutionality of federal legislation setting professional standards for providers of care under Medicare and Medicaid programs, a three-judge court in this District rejected a claim that such phrases as "medically necessary," "proper care," and "professionally recognized health care standards" were unconstitutionally vague. *Association of American Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125, 138 (N.D.Ill.1975), *affirmed per curiam,* 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975); see also *Arnett v. Kennedy,* 416 U.S. 134, 158–62, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974) (upholding statute authorizing removal of federal employees "for such cause as will promote the efficiency of the service" against a challenge of vagueness). Moreover, although plaintiff contends that defendant is estopped from terminating him because, prior to the passage of the amendatory legislation, no standards were promulgated to put him on notice as to what conduct could lead to termination, surely he may be said to have constructive notice of the requirement that he meet minimal professional standards. *See* defendant's Exh. C, filed October 11, 1977, Records of Medical Advisory Committee, p. 4. The amendatory legislation is significant not for setting standards of performance of Medicaid vendors but for endowing the defendant with a power which the Supreme Court of Illinois previously held he could not exercise absent explicit statutory authorization. Nothing in this limited retroactivity abrogates a constitutional right of plaintiff.

▮ *2. Constitutional adequacy of procedures underlying plaintiff's termination as a Medicaid vendor.* Plaintiff repeats the contention of his original complaint that, even assuming the Director's power to terminate him as a Medicaid vendor, the procedures pursuant to which his termination was decided were constitutionally inade-

quate under the Fourteenth Amendment's guarantee of due process. Defendant initially questions whether Fourteenth Amendment guarantees are applicable to plaintiff's status as a Medicaid vendor, but the Seventh Circuit explicitly has found a protectable legal interest in eligibility to provide care to Medicaid patients. *Hathaway v. Mathews,* 546 F.2d 227, 230 (7th Cir. 1976); *accord, Bio-Medical Laboratories, Inc. v. Trainor, supra,* p. 442. Nevertheless, the procedures concededly afforded plaintiff prior to the decision to terminate him as a Medicaid vendor comply fully with constitutional requirements and are validly adopted for subsequent terminations.

■■■ It is axiomatic that the elements of procedural due process include timely notice of governmental action and a meaningful opportunity to be heard. *E. g., Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Whether such notice and hearing must precede a temporary deprivation as well as a permanent deprivation depends upon the balance of governmental and private interest affected. *E. g., Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This same balance of affected governmental and private interests will determine what minimal procedural safeguards must attend the hearing provided. *E. g., Arnett v. Kennedy, supra,* p. 443 (White, J., concurring in part and dissenting in part).

Plaintiff's interest in his status as a Medicaid vendor is purely economic and, since he presumably has other means of livelihood, is less acute than that, for example, of a tenured government employee. *See, e. g., Arnett v. Kennedy, supra,* p. 443. On the other hand, the public has an overriding interest in allowing only honest, competent physicians to treat Medicaid patients and be reimbursed by the state.

Following an investigation of his professional practices, accomplished principally by an examination of his patient charts and a review of the evidence by a committee of physicians, plaintiff received a letter notifying him that he would be terminated and advising him of the availability of a hearing. Defendant's Exhibit B (filed October 11, 1977). Subsequently, plaintiff was afforded a quasi-judicial hearing before an impartial reviewing officer—a law professor—at which he apparently not only testified in his own behalf but also cross-examined adverse witnesses. *See* Report of Reviewing Officer, defendant's Exh. D, p. 4. Plaintiff's final termination was consonant with the officer's written recommendation supported by a detailed analysis of the record. Moreover, Illinois statute provided plaintiff with the right to judicial review of the agency's final decision. *Ill.Rev.Stat.* (1977), ch. 110, § 268. The Supreme Court in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), required compliance with no more than the foregoing procedural safeguards afforded plaintiff in the case at bar. Yet the balance between individual and governmental interests in *Goldberg* weighed much more heavily in favor of the plaintiff who faced deprivation of welfare benefits essential to his health and well-being.

■■■ In light of the above, the objections plaintiff raises to the procedures afforded him lack substance. He objects to the absence of a stenographic record of his hearing, for example, even though a tape recording was made (Exh. D, p. 1). No reported case requires more of a record for a reviewing court than a statement of the reasons for the decision and the evidence relied on, *Goldberg v. Kelly, supra,* 397 U.S. at 271, 90 S.Ct. 1011; and this was provided by the hearing officer in the case at bar. (Exh. D). Plaintiff also questions the validity of a hearing presided over by a law professor, but due process requires only that the hearing officer be impartial, *id.,* which attribute plaintiff does not dispute. Moreover, plaintiff waived his right to have the administrative decision reviewed by a judge; the Administrative Review Act, *Ill. Rev.Stat.* (1977), ch. 110, § 268 provides for review of final administrative decisions in the circuit court. Although plaintiff's failure to exhaust his state court remedy does not affect this court's jurisdiction under 42 U.S.C. § 1983, *Ellis v. Dyson,* 421 U.S. 426,

432–33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975), such failure to avail himself of a statutorily provided judicial remedy undercuts plaintiff's instant contention that the procedures afforded him were unfair. In fact, plaintiff's objections to the quantity and quality of the evidence on which the decision to terminate him was based do not raise an issue of constitutional proportions and merely resolve down into the issue of the *ex post facto* statute.

Accordingly, plaintiff has no colorable constitutional challenge to either the statute or procedures leading to his termination as a Medicaid vendor. His Amended Complaint will be dismissed and judgment entered for defendant.

SO ORDERED.