Norberto T. AGUSTIN, M. D.,
Plaintiff-Appellant,

v.

Arthur F. QUERN, Director, Illinois
Department of Public Aid,
Defendant-Appellee.

No 79–1075.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1979.

Decided Dec. 17, 1979.

Ellis E. Reid, Chicago, Ill., for plaintiff-appellant.

James C. O'Connell, Chicago, Ill., for defendant-appellee.

Before SPRECHER, Circuit Judge, VAN DUSEN, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

SPRECHER, Circuit Judge.

This is an appeal from the district court's granting of summary judgment in favor of defendant. The primary arguments raised by plaintiff are (1) that the summary judgment was improper because there existed between the parties genuine issues of material fact and (2) that Ill.Rev.Stat. ch. 23, §§ 12–4.26 to 12–4.27 are unconstitutional. We find plaintiff's arguments without merit and affirm the judgment below.

I

The plaintiff, Norberto T. Agustin, is a licensed Illinois physician who, prior to April 19, 1976, was a medical vendor in the Medical Assistance Program of the State of Illinois (Medicaid). On March 4, 1976, some of plaintiff's records were inspected by the Illinois Department of Public Aid (IDPA) in the course of an audit of a laboratory which performed services for some of plaintiff's patients. In that inspection, the auditors found that plaintiff had overutilized laboratory services,[1] had failed to maintain proper records,[2] and had billed for services rendered by others.[3] Consequently, the Medical Advisory Committee of IDPA recommended that plaintiff be suspended and afforded an opportunity for a hearing on the matter.

On April 19, 1976, IDPA notified plaintiff of his termination from the Medical Assistance Program and informed him of his right to request a formal review of the action. Plaintiff never requested a formal review, but instead, on April 30, 1976, filed this suit against the Director of IDPA, the Chairman of the Medical Advisory Committee of IDPA and IDPA itself, alleging that his termination constituted a denial of procedural due process. He asked for damages and a preliminary injunction, and filed a motion for a temporary restraining order. Judge McGarr denied plaintiff's motion.

On May 8, 1976, plaintiff was given the opportunity to appear before the Medical Advisory Committee to explain the condition of his records. After the meeting, the Committee recommended to IDPA that plaintiff be barred from Medicaid participation. Plaintiff requested and received a hearing on the matter, but, like the Medical Advisory Committee, the hearing officer recommended plaintiff's termination. The grounds under which termination was recommended were slightly different from those forming the basis for the original suspension. The hearing officer found that plaintiff (1) had overutilized laboratory services, (2) had failed to maintain proper patient records and (3) had materially altered records after the Department's initial

---

* Senior Circuit Judge Francis L. Van Dusen of the United States Court of Appeals for the Third Circuit is sitting by designation.

1. According to the report prepared by the auditors, plaintiff's records showed "laboratory tests billed IDPA that were all profile tests, panel tests or multiple tests which were not consistent with the complaint or diagnosis when listed." Exhibit A, Record at 18.

2. Plaintiff's records that were reviewed were found to be "of extremely poor quality and were lacking in most cases of an indication that

a physical exam or system review had been performed. Documentation did reveal that multiple prescriptions were issued on all visits even though a physical exam had not been performed." *Id.*

3. Plaintiff's Summary of Payments showed that "he charged IDPA $154,920.00 and was paid $180,870.00. The amount paid was for 61 different types of procedures . . . 26 procedure code types were for x-ray or laboratory procedures that [plaintiff] ordered and had an independent clinical laboratory to perform." *Id.*

inspection.[4]  Exhibit D, page 1.  IDPA terminated plaintiff on April 27, 1977.  Despite his right under Ill.Rev.Stat. ch. 110, §§ 264–68, plaintiff did not seek to have the hearing officer's decision reviewed by a judge.

On June 20, 1977, plaintiff filed in the district court a motion for summary judgment, stating that his constitutional rights had been abridged as a matter of law. Shortly after plaintiff filed that motion, the Illinois Supreme Court decided *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540, 12 Ill.Dec. 600, 370 N.E.2d 223 (1977), in which it held that the Director of IDPA had no statutory authority to terminate Medicaid vendors.  Plaintiff then filed a response to defendant's opposition to his motion, stating that the *Bio-Medical* decision entitled him to summary judgment as a matter of law.  In light of the *Bio-Medical* decision and since plaintiff's motion was premised on a constitutional claim, the district judge denied the motion without prejudice, stating that he could "see no purpose in attempting to decide plaintiff's constitutional issues when they have been in effect mooted by a State court decision."  App. 65. Although Judge McMillen agreed that, according to *Bio-Medical*, plaintiff had been improperly barred from the Medicaid program, he was not certain whether that termination gave plaintiff a federal cause of action.  Absent appropriate allegations in either the complaint or the motion, Judge McMillen said he could not grant plaintiff summary judgment, but he suggested, *inter alia*, that plaintiff amend his complaint to conform with the theory raised in his reply memorandum.

Before plaintiff amended the complaint, the Illinois General Assembly corrected the omission pointed out in *Bio-Medical*.  It amended the Public Aid Code to give the IDPA Director the authority to terminate or suspend Medicaid vendors after December 1, 1977, the effective date of the Act. If certain conditions were met, however, the Act granted authority to the Director retroactive from the effective date.  Ill. Rev.Stat. ch. 23, § 12–4.26.

On June 19, 1978, plaintiff amended his original complaint, again stating that his constitutional rights had been violated and additionally stating that the retroactive application of the amendment to the Public Aid Code was tantamount to an *ex post facto* law.  He did *not* assert that his termination was invalid because of the decision in *Bio-Medical*.  Plaintiff also filed a motion for an order of default, a preliminary injunction and declaratory judgment to prohibit defendant from depriving him of any rights under the Medical Assistance Program and to declare unconstitutional the amendment to Ill.Rev.Stat. ch. 23, §§ 12–4.-26 to 12–4.27.

Defendant answered the amended complaint and moved for summary judgment, asking the court to find the amended statute constitutional on its face and stating that there were no issues of material fact. The district court granted defendant's motion and plaintiff moved to amend the judgment.  His motion was denied and plaintiff appealed from the summary judgment.

## II

Plaintiff first argues that the trial court erred in granting summary judgment.  Under Federal Rule of Civil Procedure 56, summary judgment is only proper if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.Pro. 56(c). Plaintiff alleges that there is indeed a material factual dispute and that defendant is not entitled to the judgment as a matter of law.

Plaintiff lists several examples of what he views as genuine issues of material fact.  First, he states that there is a dispute over whether there was any factual basis

---

4.  In the course of the hearing, plaintiff conceded that he had altered his records after the initial audit, but stated that the changes were merely the product of a general review of his files.  The hearing officer did not find the justification sufficient to absolve plaintiff of misconduct.  Exhibit D, Report of Reviewing Officer at 4–5.

for the administrative decision to terminate him. Since there was only a taped transcript of his termination hearing and not a written one, plaintiff states that he is entitled to a *de novo* presentation of the evidence. Defendant correctly points out, however, that plaintiff is precluded from raising this issue, as he did not raise it in his amended complaint. Rule 56(c) is clear: issues of material fact must be evidenced from "the pleadings, depositions, answers to interrogatories, . . . admissions on file . . . [and] affidavits, if any . . . ." Fed.R.Civ.Pro. 56(c). Plaintiff filed no documents challenging the factual basis for the hearing officer's termination decision nor did he request judicial review of that administrative decision. Consequently, he cannot now challenge the basis for the hearing officer's decision. By the same token, plaintiff cannot now create a genuine issue of material fact by objecting to the absence of a written transcript. That objection is linked to the factual basis for the administrative decision, and, as we stated above, that issue was not raised in the pleadings and is therefore an improper basis for challenging the summary judgment. In any event, even if plaintiff were properly seeking to have the hearing officer's decision reviewed, he would not be entitled to have a *de novo* trial of the evidence. See *Quinlan & Tyson, Inc. v. City of Evanston*, 25 Ill.App.3d 879, 324 N.E.2d 65, 70, 74 (1975).

■ Plaintiff also asserts that summary judgment was improper because there is a factual issue as to whether IDPA promulgated any standards of conduct for Medicaid vendors prior to the amendatory legislation. We do not find that argument to raise a genuine issue of material fact. Ill. Rev.Stat. ch. 23, § 5–5 expressly states:

All dispensers of medical services shall be required to maintain and retain business and professional records sufficient to fully and accurately document the nature, scope, details and receipt of health care provided to persons eligible for medical assistance under this Code, in accordance with regulations promulgated by the Illinois Department.

*Id.* Although there is no evidence of "regulations promulgated by the Illinois Department," we agree with the district court's conclusion that "surely he may be said to have constructive notice of the requirement that he meet minimal professional standards." See *Agustin v. Quern*, 461 F.Supp. 441, 445 (N.D.Ill.1978). In any event, plaintiff's argument is really whether his being unaware of the appropriate standards of conduct rendered his termination constitutionally infirm, and that is a question of law, not of fact. An issue of law is no barrier to a summary judgment. *Spark v. Catholic University of America*, 167 U.S. App.D.C. 56, 510 F.2d 1277, 1281 (D.C. Cir. 1975). See also *Michigan Mutual Liability Co. v. Continental Casualty Co.*, 297 F.2d 208, 210 (7th Cir. 1961).

As a final example of a factual dispute, plaintiff states that he might have a contractual relationship with IDPA which would shed new light on the case. Again, we believe this objection to have no merit. Plaintiff's amended complaint does not sound in contract and he has neither presented evidence of a contract nor explained his failure to do so. Consequently, we do not find that issue a bar to the district court's granting summary judgment.

■ Finally, as a matter of law, plaintiff objects to the summary judgment as "an inappropriate form of relief in a case in which the law is undeveloped and its proper application is not clear from the facts in the record." Plaintiff's Brief at 12. Although we agree that plaintiff's statement is true as a general proposition, it does not bar summary judgment in this case. As defendant pointed out in his brief, "[t]he crux of plaintiff's arguments regarding the statute is that it is an unconstitutional *ex post facto* application of the law." Defendant's Brief at 15. An examination of the trial court's opinion reveals that it relied on a well-developed body of *ex post facto* law in reaching its decision. See *Agustin v. Quern*, 461 F.Supp. at 443–445 (N.D.Ill. 1978).

### III

■ Plaintiff also urges that we find unconstitutional the amendments to Ill.Rev. Stat. ch. 23, §§ 12–4.26 to 12–4.27. As stated above, the amendatory legislation was passed in response to the Illinois Supreme Court's decision that the Director of IDPA was without statutory authority to terminate any Medicaid vendors. See *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540, 12 Ill.Dec. 600, 370 N.E.2d 223 (1977). Plaintiff focuses his attack on that section of the statute which gives the Director a retroactive grant of authority in certain instances. The statute reads in pertinent part:

> The Illinois Department may terminate or suspend a vendor pursuant to the authority and powers conferred in Section 12–4.25, only subsequent to the effective date of this amendatory Act. However the authority and powers are expressly declared to be retroactive to the extent that conduct and activities of vendors engaged in prior to the effective date of this amendatory Act may be relied upon as the basis for terminating or suspending eligibility to participate in the Medical Assistance Program, where the vendor had actual or constructive knowledge of the requirements which applied to his conduct or activities.

Ill.Rev.Stat. ch. 23, § 12–4.26.

According to plaintiff, this retroactive provision is constitutionally infirm for several reasons. First, he asserts that the retroactive effect of the statute would impair the obligation of contract in contravention of the United States Constitution, Article I, § 10.[5] As we stated in Part II, *ante*, the plaintiff has at no time presented evidence of a contract, nor has he explained his failure to do so. It is axiomatic that before an impairment of contract can be alleged, there must first be shown the existence of a contract. See *Robert T. Foley Co. v. Washington Suburban Sanitary Commission*, 283 Md. 140, 389 A.2d 350, 357 (1978); see generally *Shriver v. Woodbine Bank*, 285 U.S. 467, 475, 52 S.Ct. 430, 76 L.Ed. 884 (1932). Consequently, the force of plaintiff's argument is seriously weakened.

However, even if plaintiff had shown the existence of a contractual obligation with IDPA, he would not necessarily be immune from the retroactive application of the statute. In *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), widely regarded as the leading case in modern Contract Clause interpretation, see *United States Trust Co. v. New Jersey*, 431 U.S. 1, 15, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), the Court stated that, despite the existence of the Contract Clause, a state "continues to possess authority to safeguard the vital interests of its people. . . . This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of [the Supreme] Court." 290 U.S. at 434–35, 97 S.Ct. at 1514. In *El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), the Court expanded on *Blaisdell*:

> The State has the "sovereign right * * to protect the * * * general welfare of the people * * *. Once we are in this domain of the reserve power of a State we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary.' "

*Id.* at 508–09, 85 S.Ct. at 584 [citations omitted].

Clearly, in this case, the state has a strong interest in protecting the general welfare by regulating the practice of medicine in public programs. The mere existence of a contract could not insulate a Medicaid vendor from the repercussions of his failure to meet professional standards of conduct. Consequently, even if plaintiff were to prove the existence of a contract with IDPA, the Contract Clause does not render Ill.Rev.Stat. ch. 23, § 12–4.26 constitutionally infirm.

---

5. No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . . U.S.Const., Art. I, § 10, cl. 1.

Plaintiff also urges that we invalidate the statute as an unconstitutional *ex post facto* law.[6] The district court correctly disposed of plaintiff's argument by citing the recent Supreme Court decision in *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). In that case, the Court stated that "it is clear that [the prohibition against enacting an *ex post facto* law] limit[s] the power of the States only with regard to the imposition of punishment." *Id.* at 17 n. 13, 97 S.Ct. 1515 n. 13 [citations omitted]. In *United States v. Nasser,* 476 F.2d 1111, 1117 (7th Cir. 1973), this court held that the disqualification from a practicing profession did not constitute "punishment" where it was necessary to protect the public. We believe that principle to be applicable here.

Plaintiff's final constitutional challenge to the amendment is that it violates the notice requirement of the due process clause of the Fourteenth Amendment. By its own terms, the statute will only be given retrospective effect where the vendor had "actual or constructive knowledge of the requirements which applied to his conduct or activities." Ill.Rev.Stat. ch. 23, § 12–4.-26. According to plaintiff, he could have no actual or constructive knowledge of any requirements because none existed. We disagree.

Plaintiff himself has conceded that, each time he filled out a claim form, he signed a certificate which reads in pertinent part:

> I hereby agree to keep such records as are necessary to disclose fully the extent of services . . . .

See Defendant's Brief at 14 n. 9. And as we stated in Part II, *ante,* Ill.Rev.Stat. ch. 23, § 5–5 expressly requires that medical vendors maintain "sufficient" records. A three-judge court in the Northern District of Illinois has already concluded and the Supreme Court has agreed that phrases such as "medically necessary" and "professionally recognized health care standards" give adequate notice and are not unconstitutionally vague. See *Association of Amer-*

*ican Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125, 138 (N.D.Ill.), *aff'd sub nom., Association of American Physicians & Surgeons v. Matthews,* 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975) (per curiam). We find the same true in this case. Surely plaintiff must have been aware that he was to meet minimal professional standards.

## IV

In his brief, plaintiff makes two additional arguments: (1) that the administrative decision to terminate him was unsupported by the evidence; and (2) that the decision in *Bio-Medical Laboratories, Inc. v. Trainor,* 68 Ill.2d 540, 370 N.E.2d 223 (1977) rendered his termination unlawful, as the Director of IDPA was acting without authority. We do not reach the merits of these arguments, however, because they are not encompassed within the relief requested in plaintiff's amended complaint. Based on the foregoing analysis, we affirm the district court's granting of summary judgment in favor of defendant.

Affirmed.

---

**6.** No State shall . . . pass any . . . ex post facto Law . . . . U.S.Const., Art. I, § 10, cl. 1.