ROBERT R. ROTH, M.D., Plaintiff-Appellee, *v.* THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

First District (5th Division)   No. 81—811

Opinion filed September 17, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Katherine M. Marshall and James C. O'Connell, Special Assistant Attorneys General, of counsel), for appellants.

Albert Jenner, Jr., Jeffrey D. Colman, and Robert T. Markowski, all of Jenner & Block, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:
Defendant, Illinois Department of Public Aid (the Department),

appeals from an order entered by the trial court upon administrative review, which reversed its determination that it was entitled to recoup $56,688.53 in payments made to plaintiff, Dr. Robert Roth, for medical services provided to Medicaid recipients.

The issues on appeal are: (1) whether retroactive application of the statutory power of recoupment would contravene due process; (2) whether the Department had a common law power to recoup such payments; (3) whether the Department's record keeping standards at the time of the audit were unconstitutionally vague; (4) whether the Department's finding that Dr. Roth failed to maintain adequate records was against the manifest weight of the evidence; and (5) whether the Department erred in granting recoupment where amounts claimed and evidence submitted are in dispute.

The pertinent facts follow.

On June 15, 1976, the Department notified Roth of its intention to recoup $96,703.41 in payments made to him for medical services rendered to Medicaid recipients. Roth voluntarily withdrew from the program and requested formal review of the proposed recoupment.

The Department initially listed three charges against him, (1) that he billed the Department for services he did not perform; (2) that he billed the Department more than once for the same service; and (3) that he failed to maintain proper records. At the beginning of formal hearings, however, the Department stipulated to the dismissal of the first and second charges, thereby basing its claim for recoupment solely on the ground that Roth failed to keep adequate records.

The Department justified its recoupment from Dr. Roth on the statutory powers conferred by the Public Aid Code (Ill. Rev. Stat., 1978 Supp., ch. 23, pars. 12—4.25, 12—4.26). The pertinent portions of 12—4.25 are as follows: "(A) The [Department] may deny, suspend, or terminate the eligibility of any person *** to participate as a vendor of goods or services to recipients under the medical assistance program *** [where] (c) Such vendor has failed to keep *** such records regarding payments claimed for providing services. *** (D) The [Department] may recover money improperly or erroneously paid, or overpayments, either by setoff, crediting against future billings or by requiring direct repayment to the [Department]."

Section 12—4.26 concerns the retroactive extent of section 12—4.25 and provides that: "The [Department] may terminate or suspend a vendor pursuant to the authority and powers conferred in Section 12—4.25, only subsequent to the effective date of [the Act]. However the authority and powers are expressly declared to be retroactive to the extent that conduct and activities of vendors engaged in prior to

the effective date of [the Act] may be relied upon as the basis for terminating or suspending eligibility to participate in the Medical Assistance Program, where the vendor had actual or constructive knowledge of the requirements which applied to his conduct or activities."

Sections 12—4.25 and 12—4.26 became effective on December 1, 1977.

At the hearing, Paul Rogers testified for the Department that he was one of the two auditors who reviewed Roth's records. The audit began in July 1975 and consisted of a review of approximately 25% of his records for the period from July 1973 through December 1974.

Rogers testified that the auditors compared the records maintained by Roth in the 25% sample to a computer printout of cases, called the vendor-patient profile or "VPP," for which Roth had requested payments. From this review, the auditors compiled a list of cases in the sample which they believed justified recoupment.

Of these sample cases, Rogers requested that Roth produce the records for each patient on the sample list. Roth responded that prior to May 1974 he had kept his record of services rendered on a duplicate copy of the Department billing form, or DPA—132.

The information contained on the DPA—132 form included a patient's name, address, case number, the diagnosis, a report of the services rendered, and the capacity in which the services were rendered, *e.g.*, attending physician or surgical assistant.

Rogers testified that the auditors were, however, informed that the DPA—132 was not a sufficient record and were instructed not to review Roth's copies of those records. He further stated that the Department guidelines were "pretty liberal at that time and if there was anything written relevant to the patient it was accepted"; and that if the same information contained on a DPA—132 form had been recorded on a separate piece of paper it probably would have been accepted.

Stephen Salpor, a department statistician, testified that according to his projections there was a 95% probability that the Department was entitled to recoup between $58,057.50 and $78,459.42 from Roth.

Dr. Roth testified that he primarily kept records by entering his diagnosis of a patient on a previously completed DPA—132 form and keeping a duplicate of that record on file at a particular clinic, or by also recording on cards kept in folders at the clinic. This procedure was followed by every doctor working at the clinic.

He further testified that no one from the Department had ever indicated to him what records were required prior to the audit.

The hearing officer made her findings of fact and conclusions of

law on October 10, 1978. She determined that the DPA—132 form was not an adequate medical record and held that the Department was entitled to recoup $56,688.53 from Roth by projecting the total recoupment amount from the sample figures.

Dr. Roth subsequently filed his action for administrative review on January 9, 1979. The trial court entered an order on October 19, 1979, reversing the hearing officer's decision based upon its conclusion that the Department lacked authority at the time of the agency hearings to use an administrative proceeding to recoup payments.

OPINION

Defendant first contends that the trial court erred in holding that section 12—4.25, which confers statutory authority to recover funds improperly paid, does not apply retroactively.

Citing *Agustin v. Quern* (7th Cir. 1979), 611 F.2d 206, which upheld the constitutionality of section 12—4.26, defendant argues that section 12—4.26 permits the retroactive exercise of the power of recoupment as a "necessary corollary" to the express powers of suspension and termination.

We do not agree.

As the supreme court stated in *People ex rel. Manczak v. Carpentier* (1954), 3 Ill. 2d 556, 558-59, 121 N.E.2d 762, " 'The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively.' "

While we agree that section 12—4.26 expressly allows the powers of termination and suspension of vendors to operate retroactively, we find no suggestion in the 1977 act that it was intended to apply to the recovery of funds improperly paid before the act became effective. Where, as here, the language of a statute is unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and a court has no right to look for or impose another meaning. (*Carnahan v. McKinley* (1967), 80 Ill. App. 2d 318, 224 N.E.2d 297.) We further note that when a statute enumerates certain things, that enumeration implies the exclusion of all other things although there be no negative words of prohibition. *In re Sneed* (1977), 48 Ill. App. 3d 364, 363 N.E.2d 37, *aff'd* (1978), 72 Ill. 2d 326, 381 N.E.2d 272.

Accordingly, we conclude that the statutes do not authorize

the Department to exercise its power of recoupment retroactively and we therefore do not consider whether such application would contravene due process.

Defendant next contends that the Department's power to recoup is a common law power which can be exercised through an administrative hearing.

The precise question thus presented has not heretofore been considered by this court. However, a similar question was considered by the supreme court in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, prior to the enactment of sections 12—4.25 and 12—4.26.

There, the court held that the Department had no right to terminate or suspend a medical corporation's right to participate in the Medicaid program absent an express legislative grant of authority under the Code. (Ill. Rev. Stat. 1975, ch. 23, par. 12—13.) The court reasoned that "inasmuch as an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created." 68 Ill. 2d 540, 551.

Subsequent to the *Bio-Medical* decision, which catalyzed the enactment of sections 12—4.25 and 12—4.26, the court in *Agustin v. Quern* (N.D. Ill. 1978), 461 F. Supp. 441, *aff'd* (7th Cir. 1979), 611 F.2d 206, while upholding the constitutionality of the limited retroactivity provided by the amendatory legislation, briefly touched upon the issue or procedural safeguards which has been raised in the case at bar.

There, the *Agustin* court stated that "[i]t is axiomatic that the elements of procedural due process include timely notice of governmental action and a meaningful opportunity to be heard. [Citation.] Whether such notice and hearing must precede a temporary deprivation as well as a permanent deprivation depends upon the balance of governmental and private interest affected. [Citation.] This same balance of affected governmental and private interests will determine what minimal procedural safeguards must attend the hearing provided. [Citation.]" 461 F. Supp. 441, 444.

In the absence of any Illinois authority to the contrary, and with the foregoing principles in mind, we conclude that the Department, if it retains a common-law right to recover misspent funds, may exercise that right only by maintaining a civil action in a court of competent jurisdiction. See, *e.g.*, *State of New Jersey, Department of Education v. Hufstedler* (1981), 662 F.2d 208, 218 (appeal pending), where the court commented: "We note that such a rule assures that the parties to the audit are able to press their arguments concerning

the merits of the audit in a judicial forum, either in the [Department] initiated proceedings or in an action seeking to have the [Department] remit withheld funds."

In light of a physician's economic interest in his status as a Medicaid vendor, and the overriding public interest in allowing only honest, competent physicians to treat Medicaid patients and be reimbursed by the State, we find that a balance is achieved by the institution of an appropriate action in a court of competent jurisdiction. Requiring less is simply inconsistent with our concept of fairness.

Accordingly, we conclude that the trial court properly held that the Department lacked common-law authority at the time of the agency hearings to use an administrative proceeding to recoup payments.

In light of our decision, we need not address the other issues raised by the Department in the case at bar.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.